[Sac. No. 199.     Department One.—August 8, 1896.

IN THE MATTER OF THE ESTATE OF JOSEPH B. BOODY, DECEASED.

HUSBAND AND WIFE—COMMUNITY PROPERTY—PRESUMPTION—BURDEN OF PROOF.—The presumption is that lands purchased during marriage are community property, and this presumption can be overthrown only by evidence of a clear, certain, and convincing character, establishing the contrary; and the burden of rebutting this presumption rests upon the parties claiming the separate character of the property; and, in the absence of such rebutting proof, the presumption as to the community character of the property is absolute and conclusive.

ID.—PARTNERSHIP BEFORE MARRIAGE—POSSESSORY RIGHT—PATENTS ACQUIRED AFTER MARRIAGE.—The presumption that lands, the patents to which were applied for and acquired long after marriage, are community property, is not overcome by proof that a possessory right to such lands was held by a partnership before marriage, of which the husband was a member, in the absence of proof that the money paid to obtain the title was clearly and distinctly traceable to the separate property of the husband, not by way of surmises and probabilities, but by a in

and connected channels; nor is the naked right of possession by the partners jointly such a right as to give one of the partners an equity to which the subsequently acquired title to part of the land so held could attach.

Id.—Succession to Community Property—Estates of Deceased Persons —Distribution.—At the death of the husband without descendants, the wife is entitled to succeed to three-fourths of the community property, which passes to her heirs at her death, and a decree of distribution of the deceased husband's estate, awarding only one-half of the property to the heirs of the deceased wife, is erroneous and will be reversed.

Appeal from an order of the Superior Court of San Joaquin County distributing the estate of Joseph B. Boody, deceased. Joseph H. Budd, Judge.

*Minor & Ashley*, and *Nicol & Orr*, for Appellants.

*Woods & Levinsky*, for Respondents.

Van Fleet, J.—This is an appeal from an order of partial distribution, distributing certain parcels of real estate belonging to said estate, and the only question involved is whether the lands were community property, or the separate property of the deceased.

The deceased, Joseph B. Boody, died intestate, in the county of San Joaquin, November 7, 1893, without issue, leaving him surviving as his heirs at law Elizabeth Boody, his wife, a sister, and the children of a deceased brother.

Elizabeth Boody, the wife, died intestate November 10, 1893, without issue, leaving as her next of kin and heirs at law a sister, one child of a deceased sister, and the children of certain deceased brothers.

The heirs of Elizabeth Boody claimed on the distribution that the property in controversy was the community property of Joseph B. and Elizabeth Boody, and that they were entitled of right to have distributed to them three-fourths thereof. The court below denied this claim. It found that all of the real estate involved was the separate property of Joseph B. Boody, and accordingly distributed to the heirs of Elizabeth but one-half thereof. The latter appeal, contending that the finding

as to the separate character of the property is not warranted by the evidence.

It appeared without conflict that Joseph B. and Elizabeth Boody were married in 1857, and that the title to all of the real estate in question was acquired long subsequent thereto—the first parcel in March, 1867, and the various other parcels at different dates thereafter; and that all of said lands were acquired by purchase.

The only evidence other than that of the record title bearing upon the circumstances under which any of the land was acquired relates to two pieces, one known as the "Locust Shade Place," and the other the "Swamp Land Tract." The evidence tends to show that at and prior to the date of his marriage the deceased, Boody, and one T. P. Heath were in possession of these two pieces of land, then public unsurveyed lands, and were farming in partnership, cultivating the land to grain. The extent of their possessory holding does not appear, but they owned some stock and farming implements, and raised sometimes as high as two or three hundred acres of grain. It does not appear what the value of the partnership property was, or whether they were indebted to any extent, or how much, if anything, was realized from their operations, over and above expenses. Some of the witnesses on behalf of respondents testified in a general way that Boody & Heath were regarded in the community as successful farmers, and were reputed to have money to loan, but none of the witnesses knew anything of their affairs except through general current rumor in the neighborhood. The testimony of Albert Drouillard, a witness on behalf of respondents, very fairly illustrates the character of the evidence relied upon to establish the separate character of the property. He testified:

"I knew T. P. Heath and J. B. Boody; first met them in 1856; they were living together at that time on what is called the Locust Shade Place, on the road from Stockton to Lockford. Heath and Boody were living together. I know the lands afterward obtained by Mr. Heath as swamp and overflowed lands. Mr. Heath was

farming that land in 1856, that is, the swamp and over-flowed lands. . . . . I knew the firm of Heath & Boody in 1854. They were farmers, farming together in common. I couldn't tell you how much land they did farm; quite extensive farmers. I threshed there in 1856. I suppose there must have been three hundred acres of grain. I could not tell how many cattle or farming implements they had, or how much grain they raised that year. . . . . They were considered successful farmers, and were, I think, in stockraising also." On cross-examination, the witness testified:

"In the summer of 1856 I assisted Heath & Boody in threshing. I do not know how much grain was raised, or what it sold for. I don't know whether they were indebted at that time or not. I don't know what became of the money realized from the sale of crops. I don't know anything personally about their affairs, or if they had a dollar over and above their debts at that time. I don't know whether any profit was realized from this crop of wheat. I know nothing about their financial or business affairs, except that people said they were successful farmers. I know they farmed well. I know something about it, for I saw their farming. It is a fact, though, that men farm well and get poor, and the raising of good crops is no evidence that a man is getting ahead."

The evidence on behalf of appellants, on the other hand, tended to show that the partners did not have any considerable means at or about the time of the marriage of Boody. Mrs. Heath, who was a sister of Mrs. Boody, and who was married to Heath about a year after the marriage of the Boodys, testified that she loaned Boody & Heath four or five hundred dollars shortly prior to her marriage, which they used in their business, and that she never knew, at or prior to her marriage, of either Heath or Boody being possessed of considerable means. The evidence is wholly silent as to any means or property owned by Boody other than his interest in the partnership property at the time of

his marriage. The partnership seems to have been continued after the marriage, but how long does not appear. In 1866, the land having been theretofore surveyed, and the township plat filed in the local office, Boody filed a declaratory statement on the legal subdivisions covering the "Locust Shade Place," and thereafter made proof of his pre-emption right to said land and paid for the same, and in June, 1868, received a patent therefor from the government. About the same time, Heath made application for and purchased from the state, as swamp and overflowed land, the legal subdivisions embracing the "Swamp Land Tract" theretofore occupied by them. Thereafter, in 1872, Heath, for an expressed consideration of one dollar, conveyed to Boody an undivided one-half of the swamp land, and Boody, for a like consideration, conveyed to Heath an undivided half of the land pre-empted by him. The other parcels in controversy were all purchased from private parties. This is substantially the evidence upon which the finding as to the separate character of the property is based, and we regard it as wholly insufficient to sustain that finding.

The purchase of the lands having been made during marriage, the presumption is that it was community property, and this presumption could be overthrown only by evidence of a clear, certain, and convincing character establishing the contrary; and the burden of this showing rested with the parties claiming the separate character of the property. In the absence of such proof the presumption as to the community character of the property was absolute and conclusive. (*Meyer* v. *Kinzer*, 12 Cal. 247; 73 Am. Dec. 538; *Morgan* v. *Lones*, 78 Cal. 62; *Dimmick* v. *Dimmick*, 95 Cal. 327.)

This requirement of the law is not satisfied by the evidence before us, nor is the evidence sufficient to raise a substantial conflict when opposed by the presumption. It would be only by the aid of the vaguest conjecture or surmise that it could be said that any of the lands owned by Boody at his death were acquired by his

separate means.   The evidence not only fails to show that he paid for any of the land out of moneys belonging to his separate estate, but it fails to show that he was possessed at the times of the various purchases of any separate property whatsoever.   It does not even follow necessarily that because he may have had some separate property at his marriage, that he had any such ten years later, when he bought the first piece of land. The vicissitudes of life are such that he may have lost all such means and have possessed at the time of these various purchases nothing but property earned by the community.   It was incumbent upon the parties claiming the land as separate estate to trace clearly the sources of the particular funds with which the lands were purchased to the separate property of Boody, "not by way of surmises and probabilities, but by plain and connected channels."   (*Dimmick* v. *Dimmick, supra.*) This the evidence wholly fails to do, and does not constitute a sufficient basis for the finding rested upon it.

The doctrine of *Harris* v. *Harris*, 71 Cal. 314, and *In re Lamb*, 95 Cal. 397, has no application to the circumstances of this case.   In both those cases legal steps had been initiated by the filing of application, prior to the marriage, to procure title to the land from the government.   This fact was held to create an equity to which the legal title when acquired would relate back and constitute the land separate estate, although the title was not actually acquired until after marriage.   Here no such fact exists.   Nothing but the naked right of possession, and that a joint one in the partnership of Boody & Heath, existed in any of the lands here involved. This certainly was not such a right as to give one of the partners an equity to which the subsequently acquired title to a portion of the land so held could attach.

Respondent's contention that, whether the lands were community property or separate property, in either event, appellants received all they were entitled to take, is untenable.   If the lands were community property, Elizabeth Boody was entitled at the death of the hus-

band, without descendants, to three-fourths of such property, and the appellants, standing in her shoes, take in like proportion. (Civ. Code, sec. 1402; *Jewell v. Jewell*, 28 Cal. 232.)

The order is reversed.

GAROUTTE, J., and HARRISON, J., concurred.