# CASES DETERMINED

### IN THE

# SUPREME COURT OF CALIFORNIA

### BUT NOT

# OFFICIALLY REPORTED.

---

## RIEBLI v. HUSLER.

### S. F. No. 2842; September 4, 1902.

#### 69 Pac. 1061.

**Community Property.**—The Presumption That Cattle Bought by the husband during the marriage were community property is not overcome by the wife's mere testimony that they were bought with her money, and that she had a certain amount of money in banks and loaned when she was married, three years before the purchase; they having been placed on a ranch occupied by them under a lease to the husband alone, and treated as his property by his afterward giving her, when he was insolvent, a bill of sale thereof.[1]

**Sale—Change of Possession.**—A Recorded Bill of Sale from Husband to wife of cattle, possession of which remained as before on a ranch occupied by husband and wife, but leased to him alone, is within Civil Code, section 3440, providing that a transfer of personalty, made by one having the possession or control thereof, and not accompanied by delivery and followed by change of possession, is void against the seller's creditors.

APPEAL from Superior Court, Sonoma County; Albert G. Burnett, Judge.

Action by Christina A. Riebli against E. A. Husler. Judgment for defendant. Plaintiff appeals. Affirmed.

J. P. Rodgers for appellant; Lippitt & Lippitt for respondent.

---

[1] Cited in the note in Cof. Pro. Dec. 65, on what is community property.

COOPER, C.—This action was brought to recover fourteen head of cows, or the value thereof, which are alleged to be the separate property of plaintiff. The defendant at the time of taking the property was a constable of Petaluma township, and justified under a writ of execution in favor of one Keegan against A. B. Riebli, the husband of plaintiff. The case was tried before the court, findings filed, and judgment entered for the defendant. Plaintiff prosecutes this appeal from the judgment, and from the order denying her motion for a new trial.

The court found that, at the time of the taking, the property was not the property of plaintiff, but was the property of her husband, against whom the writ of execution issued. The sole point contended for by plaintiff is that there is not sufficient evidence to sustain this finding. We have carefully examined the evidence, and find it sufficient. The cows were bought by plaintiff's husband in October, 1899. They were not owned by plaintiff before her marriage, nor were they afterward acquired by her by gift, bequest, devise or descent. At the time they were purchased they were not conveyed to her by an instrument in writing. The cattle, therefore, having been purchased during marriage, the presumption is that they were community property. The burden was upon plaintiff to overcome this presumption by evidence clear and convincing. In the absence of such evidence the presumption as to the community character of the property must prevail: Civ. Code, secs. 162, 164; In re Boody's Estate, 113 Cal. 686, 45 Pac. 858; Fennell v. Drinkhouse, 131 Cal. 451, 82 Am. St. Rep. 361, 63 Pac. 734.

While there is some evidence tending to show that the cows were purchased with the separate money of the plaintiff, it is not clear, nor, in our opinion, sufficient to overcome the presumption as to the community character of the property. The only evidence on the point is that of plaintiff. She did not produce the evidence of her husband, nor of the party from whom the cattle were purchased. She testified that the cattle were bought by her husband out of her money; that at the time of her marriage—more than three years before—she had between $900 and $1,000 in the Sonoma County Bank, and some money in the German Loan Society, and some loaned out in Washington. She did not say that she had this money or any money in any bank at

the time the cattle were purchased. She did not show that she drew any money from any bank about the time of the purchase, nor that she gave her husband or anyone a check on any bank or on any party in payment of the cattle. The cattle were bought and placed on the ranch, which was occupied by plaintiff and her husband, under a lease to the husband alone, and turned on the range with the other cattle. They were not branded or marked by plaintiff in any way so as to identify them from the cattle owned by her husband. No one testified to any claim made by her to the cattle at or about the time of the purchase. Afterward, in June, 1900, the plaintiff and her husband went to an attorney for advice, and thereupon the husband executed and delivered to the plaintiff a bill of sale for "twenty-six head of cows, one bull, seven calves, seven head of horses and harness, wagons, and farming implements, now on the ranch of Charles Lynch, in Vallejo township; also all chickens, pigs, and hay on said ranch." The bill of sale included the cows in controversy. It was recorded, and plaintiff said concerning its execution: "Q. How came he [Riebli] to make that bill of sale? A. Well, he lose all his property where he had all his money he had—he lose on the Lynch place— and, of course, I want to be sure of my property; and that's why we had the bill of sale drawed up, so I could do as I pleased, because it was bought out of my own property, and was my own property, that I worked thirteen long years for." It is evident that this bill of sale was an afterthought. Plaintiff had taken no bill of sale of the property at the time it was purchased, but when her husband had lost his money she took the precaution to take a bill of sale from him of that which she says she already owned, and to have the bill of sale recorded. It is evident that at the time the bill of sale was made the plaintiff and her husband regarded the property as community property, or the separate property of the husband, and we will so regard it. It has been held that the contemporaneous and practical construction of a contract by the parties to it is strong evidence as to its meaning if its terms are equivocal: Keith v. Engineering Co. (Cal.), 68 Pac. 598. We think it equally clear that the plaintiff and defendant, by the bill of sale, treated the property as subject to the control and dominion of the husband, and not as the property of the wife. We will assume that

they each knew its character, and that the husband would not have conveyed, nor the wife have demanded a conveyance of, property the title of which was already in the wife. We fully recognize the right of the wife to her own separate property, and her right to invest and reinvest it as she pleases. But we know that the wife is often a willing tool in aiding her husband to escape his just debts. In such case the better rule is to require the character of the property to be proven by clear and convincing evidence. It is not clear to us that property bought by the husband, and mingled with his own, and afterward conveyed by him to his wife, was all the time her separate property. The bill of sale conveyed the property to the wife as between husband and wife. But there was no immediate delivery nor change of possession. It remained upon the ranch in the possession of the husband as before. The ranch was leased by the husband, and no claim is made as to any change of possession. There had been no change of possession when Keegan became a creditor, and the bill of sale was therefore void as to him: Civ. Code, sec. 3440.

It follows that the judgment and order should be affirmed.

We concur: Haynes, C.; Smith, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.