[No. 1844]

## A. A. MALMSTROM, AND HIS WIFE, JOSIE MALMSTROM, RESPONDENTS, v. PEOPLE'S DRAIN DITCH COMPANY, A CORPORATION, APPELLANT.

1. WATERS AND WATERCOURSES—IRRIGATION DITCH—RIGHT TO MAINTAIN.
   Where defendant had owned, maintained, and used an irrigation ditch over the premises in controversy for a period longer than the statute of limitations prior to plaintiffs' occupancy, defendant could maintain the ditch in its present location and have water flow through the same to the extent of its capacity, or in the volume contained in the ditch during the years defendant used it.

2. WATERS AND WATERCOURSES—IRRIGATION DITCHES—OVERFLOW—BURDEN OF PROOF.
   Where plaintiffs claimed that defendant so neglected to clean its irrigation ditch that a part of the water overflowed onto plaintiffs' premises, and it appeared that the overflow was increased by plaintiffs changing the size of the ditch, the burden is on plaintiffs to show how much damage, if any, was occasioned by that part of the overflow which would have occurred solely by reason of defendant's failure to clean out the ditch had its capacity not been further restricted by plaintiffs' acts.

3. WATER AND WATERCOURSES—IRRIGATION DITCHES—OVERFLOW—CONTRIBUTORY FAULT.
   Where plaintiffs claimed injury to their premises by the overflow of defendant's irrigation ditch, it was not liable for that part of the injury which was caused by plaintiffs' own acts in excavating their cellar and placing the foundation of their house so dangerously close to the ditch, or on such low and wet ground that the cellar was flooded and the earth soaked and softened under the foundations by percolating water, which might have come into and stood stagnant in the cellar if the ditch had never overflowed.

4. WATERS AND WATERCOURSES—IRRIGATION DITCHES—CONTRIBUTORY FAULT.
   An owner of property adjoining an irrigation ditch could not recover damages for overflows caused by his own act in restricting the size of the ditch and in lowering the banks.

5. HUSBAND AND WIFE—OWNERSHIP OF LAND—"COMMUNITY PROPERTY."
   Where title to land purchased with money earned after marriage is taken in the name of the wife, the land is "community property" under the husband's control so that an action for injury thereto may be maintained by him alone.

6. EVIDENCE—DOCUMENTS—CONTRACTS.
   In an action for injuries to plaintiffs' property by the alleged overflow of an irrigation ditch, an instrument between plaintiffs and defendant ditch company reciting that plaintiffs might maintain their house over and on the ditch right of way so long as it was not detrimental or injurious to defendant's interests, and that plaintiffs agreed to remove the same on notice, etc., was admissible as an admission that defendant was entitled to maintain its ditch across the premises

as it then existed, and as a recognition of plaintiffs' obligation to change or remove any part of its obstruction, which might impede the flow or injure the defendant.

7. DAMAGES—ISSUES—EVIDENCE—INJURIES TO PROPERTY.

Where, in an action for injuries to plaintiffs' property by the overflow of an irrigation ditch, the complaint alleged that water stood stagnant in pools, and caused an offensive stench and unhealthy and unsanitary odor to arise and surround and fill plaintiffs' dwelling-house, etc., evidence that the *feme* plaintiff was rendered ill by the stench and unhealthy odors arising from the stagnant waters in the cellar was admissible, although no special damages resulting from sickness was alleged, the court having charged that it was not allowed to prove any special damage from sickness, and that the evidence was to be considered only on the issue whether a recovery should be restricted to rental value.

8. DAMAGES—DESTRUCTION OF CROP.

The measure of damages for the total destruction of growing crops is the value of the probable yield of the crops under proper cultivation, when matured, and ready for market, less the estimated expense of harvesting the same, including the expense of necessary irrigation and the value of any portion of the crops that may have been saved.

9. WATERS AND WATERCOURSES—IRRIGATION DITCH—OVERFLOW—CONTRIBUTORY NEGLIGENCE.

When plaintiffs' acts and omissions had contributed to the injury, it was improper for the court to charge that the doctrine of contributory negligence was not applicable to the case, if defendant knew of the danger to plaintiffs' premises, and could have prevented the injury.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr,* Judge.

Action by A. A. Malmstrom and wife against the People's Drain Ditch Company. Judgment for plaintiffs, and defendant appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Summerfield & Curler,* for Appellant:

I.   Counsel for appellant insist that the evidence on this case was insufficient to justify the verdict of the jury, and the judgment based thereon, for the reason that the evidence shows conclusively, and without any conflict, that if there was any damage done to the respondents' land or the garden or the shade trees growing thereon, or to respondents' house, during the years 1905, 1906, and 1907, by reason of the water

overflowing from the banks of the ditch onto and into these premises—that that overflow was caused entirely by the respondent, A. A. Malmstrom, himself, in narrowing the ditch and lessening the capacity of the ditch to carry water. That respondent, A. A. Malmstrom, did interfere with appellant's ditch, and did make the ditch narrower, is shown by A. A. Malmstrom's own testimony, and that the narrowing of the ditch did lessen the capacity of the ditch is shown conclusively by the uncontradicted testimony of Mr. Mann, the expert for the appellant, and is a matter of which the court and jury must have taken judicial knowledge.

II.   The title and possession to two of the lots being in A. A. Malmstrom, and the title and possession of one of the lots being in Josie Malmstrom, there being no joint ownership or possession, and there being no joint injury, if actions could be maintained at all, A. A. Malmstrom could maintain an action for injury to lots fifteen and sixteen, but not to lot fourteen, and Josie Malmstrom could maintain an action for injury to lot fourteen, but not to lots fifteen and sixteen. This is not a case of misjoinder of parties plaintiff, but a case where the proof does not support the allegations of the complaint, and for that reason the evidence was insufficient to justify the verdict of the jury, or the judgment based on said verdict.

III.   When growing crops are alleged to have been destroyed by another, it is incumbent upon the plaintiff to prove that there was a reasonable certainty that the crops would have matured but for the wrongful act of the defendant, and that the true measure of damages would be to allow the plaintiff the value of the yield when matured and ready for market, reducing therefrom the estimated expenses of producing, harvesting and marketing the crop, and deducting the value of any portion of crops that may have been saved.  (*Watt* v. *Nev. Cen. R. R. Co.*, 23 Nev. 156; *Candler* v. *Ditch Co.*, 28 Nev. 167.)

IV.   It was error in the court to give respondents' instruction No. 2, as modified by the court, and the instructions of appellant, for the reason that these instructions are in conflict with proposed instruction No. 1, which was given by the court.   They assume that the title of the appellant to the land

upon which its ditch was immediately situate was simply an easement or right of way, whereas the pleadings establish appellant's ownership in the land (see authorities heretofore cited), and is an assumption of fact contrary to the pleadings. It is also an instruction to the jury that the appellant was bound to use that ditch in such a manner that the respondents would not be damaged thereby, even though the respondents interfered with the ditch, and the acts of respondents, in such interference, were the proximate cause of the damage.

V.   Instruction No. 11, as given, was error, for the reason that it was, in effect, an instruction that if the appellant was negligent in any manner in keeping the ditch in repair that the respondents could recover, although they had materially contributed to their own injury in narrowing the ditch, and even though the acts of respondents themselves were the proximate cause of the injury.

VI.   Because the evidence in this case was insufficient to support the verdict of the jury, and the judgment based thereon, and because of the errors committed by the court in the trial of the case, appellant's counsel respectfully submit that the order of the court denying appellant's motion for a new trial be reversed, and the cause sent back to the lower court for retrial.

*C. R. Lewers*, for Respondents:

I.   The contention made by the defendant, that the evidence is undisputed in showing that Malmstrom had caused his own damage, is contradicted by the transcript, at numerous places, where it is testified that the water which flooded the garden and filled the cellar of the house came from a point on the defendant's ditch below the premises of the plaintiffs, and flowed back onto his premises.   In the light of this testimony and the observations made by the jury upon the premises, this court cannot conclude as an undisputed fact that Malmstrom caused his ownp remises to be flooded by putting in the planking up near the house; also, it is clear from the testimony that, in leveling off his premises, Malmstrom must have increased the average pipe of the banks of the ditch, because this would be the inevitable effect of leveling the high places

into the low.   Besides this, he put two twelve-inch planks on
each side of the ditch across his premises, as far as the house,
and under his house had it planked six feet high.   As the
ditch when planked up was nearly five feet wide and the
banks nearly three feet high, it is hard to see where any dam-
age could be done the defendant by the embankments which
Malmstrom made.

II.   No contention is made or can be made under the evi-
dence that Malmstrom and his wife occupied these premises in
any way except jointly.   They used them for the purpose of
a homestead and for a garden to supply vegetables for their
own consumption.   They lived there together with their
family, having all of the lots enclosed by a common fence,
and no distinction whatever was made in the use of the lots.
The title to all the property was in effect held in common,
and as the trial court instructed the jury, without objection or
exception on the part of defendants, the mere fact of actual
rightful possession was enough to authorize the plaintiffs to
bring an action for an interference with their property.   This
instruction states the undisputed rule of law, and it is not
necessary to cite authorities in support thereof.   The entire
contention of the defendant that the plaintiffs have failed in
showing a proper title must, therefore, fail.   In addition to
this, the evidence indicated, and the jury so found, that the
damage was common to both of the plaintiffs by reason of
their united occupation and use of the premises.

III.   Counsel for the defendant made the very ingenious
contention on page 14 of their brief that the plaintiffs can
recover nothing for the damage caused them by the sinking of
their house, for the reason that the house was built over the
ditch which belonged to the defendant.   Their position, in
short, seems to be this: The complaint alleges that the defend-
ant owned and operated a drain ditch running through the
land of the plaintiffs.   The answer admits the allegation of
the complaint in this respect.   This allegation, they say, must
therefore be taken to mean that the defendant owns more than
a mere easement, or right of way, but actually owns the land
upon which the ditch was situated.   As the plaintiffs built
their house on this land, they must be considered to have

assumed the risk of whatever damage flowed from that fact.

IV.    There is no rule of law that a licensee may be injured with impunity, or that damage to him must be done wilfully. On page 16 of their brief, counsel cite Am. & Eng. Ency. Law, p. 1136, to the effect that a licensor is not responsible for the careless operation of his property.    In answer to this contention, we ask the court to read the very next heading on page 1137 of the authorities cited to the effect that an invited licensee is entitled to have reasonable care observed toward him.    The rule is laid down that damages in a case of this kind are not to be measured by the rental value of the premises, but are to be adjudged by the discomfort caused the owner of the premises.    It is based upon the theory that he has the right to use his premises for their intended purposes, and that the law does not compel him to measure their value by the rent he might get for them.

V.    The objection to plaintiffs' instruction No. 12 is fully met by the opinion of the court in *Shields* v. *Orr Ditch Company, supra.*    This is not a case where the doctrine of contributory negligence is applicable, as the evidence shows that the defendant was fully aware of the condition of the premises at all times, and that even if the acts of the plaintiffs had anything to do with the flooding of the premises, those acts had been committed long previous to the injury and were known by the defendant and its officers.

VI.    After the jury had heard the testimony, they made an examination of the premises, and in the light of that testimony there is no doubt that what they observed there had a strong influence in determining their verdict.    This court cannot say that the verdict was contrary to the evidence and to the observations of the jury on the ground.    The amount of damages given is small in comparison to the injury inflicted. We, therefore, submit that the order of the trial court refusing the motion for a new trial should be sustained.

By the Court, TALBOT, J.:

Plaintiffs sued to recover damages claimed to have been caused by the overflow of water from defendant's ditch onto plaintiffs' three lots in the town of Sparks.    The ditch had

been used for thirteen years, and the plaintiffs had erected a house upon and used the premises for about three years prior to this suit. The old right of way grade, and track of the Central Pacific Railway Company passed through the lots, and the defendant's drain ditch crosses them diagonally. After the track was straightened and moved to another place a few years ago, the plaintiffs and their grantor leveled the ground and filled in the excavation thereon at the sides of the old grade. The plaintiffs erected a house there about twenty-five feet in width by fifty feet in length, one end of which extends across the ditch, and underneath the house they constructed a cellar which comes within five to nine feet of the ditch. In the complaint they demand a total of $1,013 damages and an injunction. They allege that during the spring and summer months of the years 1905, 1906, and 1907 defendant allowed moss and weeds to grow and remain in the ditch and other débris to accumulate there, upon, above, and below plaintiffs' premises to such an extent that during each of those years the water in the ditch overflowed the banks into, upon, and over the plaintiffs' premises and stood stagnant upon plaintiffs' garden of vegetables and yard of trees, and filled up and stood stagnant in the cellar, "and thereby caused an offensive stench and unhealthy and unsanitary odor to arise and surround and fill plaintiffs' dwelling-house and the rooms therein, making life extremely uncomfortable and almost unbearable, to the plaintiffs' damage in the sum of $600; that because of the flooding of plaintiffs' premises the ground under plaintiffs' dwelling-house was soaked and made so soft that the house settled and sank down to such an extent that the plaintiffs have been compelled to expend for labor and materials to prevent the settling and sinking of the house $169; that the overflow of the waters destroyed elm trees belonging to the plaintiffs to their damage in the sum of $98 and vegetables to the value of $146." There was a verdict rendered by nine of twelve jurors, and judgment in favor of plaintiffs for $576, from which, and an order denying a motion for a new trial, the defendant has appealed.

The most important one of the numerous assignments of error is that the evidence fails to support the judgment. In

this connection we first consider to what extent, if any, the defendant is liable on the principal item for which damage is claimed resulting from water in the plaintiffs' cellar and the consequent unpleasant and unhealthy odors and the settling of the house.   It is clear that the defendant is entitled to maintain its ditch there and to have water flow through it to the extent of its capacity or in the volume it flowed during the many years which defendant owned and used the ditch, covering a period much longer than the statute of limitations, prior to the time that the town was laid out or the lots occupied by the plaintiffs.   (*Ennor* v. *Raine*, 27 Nev. 178.)   It appears from the uncontradicted evidence as introduced by the plaintiffs and by the defendant that the plaintiffs planked up the sides of the ditch to a width of four feet and three inches, thereby reducing its width about one-half on top, and that they placed the timbers to support the house about one foot from the edge of the ditch after it had been made narrower, which timbers so placed would have been in the ditch if its width had not been so reduced.   The engineers estimated that the bottom of the cellar was about one foot to fourteen inches higher than the bottom of the ditch, and that the banks of the ditch under the house and opposite the cellar were two and one-half or three feet high.

It is shown and undisputed that, during the irrigating season and that part of the year for which damage is claimed cellars in the neighborhood on ground of about the same and greater elevation were flooded by percolating waters; that in laying water pipes, setting fence posts and electric poles, and planting trees in that vicinity water was found two and two and one-half feet from the surface.   This condition was shown to exist in the street and in other blocks at places more remote from the ditch than plaintiffs' cellar and lots.   There was testimony that seepage water came to the surface and stood in the street or road about fifty or one hundred feet easterly from plaintiffs' place.   It is not denied that these premises are on low ground, and, after examination of all the testimony given during the trial, none is found which raises any doubt that if the depressions on these lots were ever leveled up as high as the ditch, the new earth in them settled so that they were

lower than the surrounding country, and that water running or seeping into them would remain there. The plaintiff said that water would run up to his house and stand there like a lake.

There is no evidence adverse to the conclusion that water percolated from the ditch or from the soil into the cellar. True, the plaintiff stated that there was no water in the cellar in a hole he dug in December; but this is not out of keeping with the testimony of witnesses for the defendant that the water rises in that vicinity during the irrigating season and recedes later, which is usual in many other localities. In the dry months a few inches of water in the bottom of the ditch would be lower than the cellar; but when the ditch filled the water in it would be considerably above the bottom of the cellar, into which it would naturally seep if the surrounding soil itself were not saturated with percolating water. The plaintiff testified that water seeped from the ditch into the cellar, that some of it ran over the banks of the ditch, and that when the ditch was mowed and cleaned out the water receded. All this may be true, and still the plaintiff may not be entitled to recover.

The defendant had the right to convey at least as much water in the ditch across the plaintiffs' lots as the ditch carried before there was any interference with it by the plaintiffs. It was only liable to keep the ditch in such clean condition and repair below the plaintiffs' premises that no water would have escaped over the banks if the plaintiffs had not narrowed or changed the ditch, and the defendant could keep it filled up to its former high-water mark. Following the practice of former years, the ditch was cleaned in the spring, and the moss and weeds mowed out of it in the summer, during each of the three years for which damages are claimed. By excavating the cellar within a few feet of the ditch and placing the foundations of the house on its banks and in the cellar at the time of the year when the ditch was dry or carried only a little water, plaintiffs acted at their own risk, and defendant would not be liable for injury caused by water seeping through the soil from the ditch or adjacent land into the cellar after the ditch became filled with water in the irrigating season.

The cellar and timbers on which the house stood were placed so close to the ditch as to encroach upon a reasonable width for seepage along defendant's right of way acquired by prior use. If the defendant were liable under these conditions, the plaintiffs and others could excavate cellars or lay foundations for buildings at the edge of the ditch along its course and deeper than the ditch and recover damages for any injury caused by water percolating from the ditch, resulting in the deprivation of its use by the defendant and the loss of its vested right.

Defendant is liable for any damage caused by overflowing water which would have overflowed if the plaintiffs had not made any change in the ditch; but defendant is not liable for any overflow caused by the plaintiffs narrowing the ditch or lowering the banks, although, if the defendant had kept the ditch better cleaned it might have carried through without injury to the plaintiffs a volume of water less than the ditch originally would have carried. The plaintiffs were at liberty to change the ditch to a flume, pipe, or culvert so long as they did not lessen its capacity nor interfere with the flow as required for the beneficial uses or purposes of the defendant; but they cannot recover for injury resulting from any change in the ditch made by them. If the defendant so neglected to clean the ditch that a part of the water which overflowed into the plaintiffs' premises would have overflowed if the plaintiffs had not changed the size of the ditch, the burden of proof is upon the plaintiffs to show how much damage, if any, was occasioned by that part of the overflow. At least a part of the overflow was caused by the narrowing or lowering of the ditch by the plaintiffs, and they cannot recover for any damage caused by that part. That the plaintiffs reduced its capacity by narrowing it is shown without contradiction, and that they further reduced its capacity by lowering its banks at or near the end of the flume seems almost conclusive under the evidence.

The testimony of the plaintiff that the water ran through after the moss and weeds were mowed out of the ditch, without showing the volume of water at that time, and the testimony of the plaintiffs' engineer, not based on any figures

taken in connection with his survey, that he believed the water would run through, can have little, if any, force against the testimony of the plaintiffs and their witnesses that the water ran over the banks of the ditch on the premises, indicating that the ditch was lower there than at other places, and the testimony on the part of the defendant that the water never ran over the banks at that place before the plaintiffs changed the ditch, and that the water did not run over the ditch at other places at the times during which plaintiffs claim to have been damaged. Considering that it is shown that the ditch was narrow and low where it crosses the premises, it does not appear from the evidence that the water would have overflowed there if plaintiffs had not reduced the capacity of the ditch and it had not been kept in better or cleaner condition by defendant, and consequently the overflow from the ditch where it crossed the lots may have resulted from the plaintiffs' own acts.

As an illustration of the evidence in this regard, Mrs. Malmstrom, one of the plaintiffs, testified:

Q. Where did it come from? Above your premises, on your premises, or below your premises? A. On both sides.

Q. What do you mean by that? A. Both sides of the ditch.

Q. Did it flow out—I mean where, with reference to its being above your premises here, or on the lots, or down here (indicating)? Where did it come over the banks? A. Right on the lots.

The brother of Mrs. Malmstrom testified: A. I meant the water was running over the ditch about the height of two inches.

Q. How long a space on the ditch was the water running over that way? A. It was running over mostly here by the house, and down this way (indicating).

Q. And upon which side was it running? A. On both sides.

Q. Was it escaping over the ditch rapidly? A. Not so very rapidly, because the water does not flow very rapidly.

Q. Where did it go to? A. Run on the land there.

Q. Well, did the water that was running over the ditch get back into the ditch further down? A. No, sir.

Q. Where did it go then? A. Stayed right there.

Q. Just stayed on the land.   In other words, you mean to convey the idea that it backed up over the banks of the ditch onto the land, about two inches above the bank of the ditch, is that what you mean?   A. Yes.

Q. Now, about the north side of the ditch?   A. Well, there was water running out on the north side, too.

Q. Did it remain upon the land also, or did it escape from the land?   A. No, it remained on the land.   It was all standing water, you know.

Q. And that was the same on the south side of the ditch; you mean to convey the idea that it backed up over the back of the ditch and stood there, is that right?   A. Well, it looked as though it stood there; of course, it was pretty near all level, the ditch.

After the defendant had presented its evidence and its engineer had stated on the stand that the shallowest place in the ditch was at the lower end of the flume, where it was one and six-tenths feet deep at a point about half-way between the house and the fence on the plaintiff's premises, and where it would overflow if the ditch were filled to its capacity in other places, the plaintiff testified in rebuttal, as he did previously, that the water had run over the ditch at a point below and about fifty feet east of his lots, and had flowed back onto them; but this was not necessarily a denial of his original testimony that the water had flowed over the banks of the ditch where it crossed the lots, as had been testified to by his other witnesses.   For the water to flow through the ditch across the lots and over the bank fifty feet beyond, and from there back up over the banks of the ditch on the lots where it is conceded to have overflowed, without first rising over the banks of the ditch on the lots, appears impossible.   The answer of a witness, induced by skilful cross-examination, that the water if obstructed or raised would overflow at the upper end of the flume first, after he had testified that by his survey the flume was much lower at the lower end, is not convincing that the water would run over at the higher end first, nor that the plaintiff did not lower the ditch at the lower end of the flume so that the water ran over.

Under these circumstances, we are unable to say that there

is any substantial evidence contradicting the testimony given
by defendant's engineer and witnesses that the ditch is low on
the lots of plaintiff where he had reduced its width and
boarded its sides, leveled its banks, and planted vegetables
within three feet of its edges. If it were admitted that the
banks of the ditch had not been lowered, the reduction in
width conceded to have been made by the plaintiffs was suf-
ficient to largely reduce its capacity, and it is not shown that
anything was done to offset this reduction. The fact that the
water overflowed there leads to the conclusion that the banks
were not raised there, or raised enough, by plaintiff to over-
come the reduction in width. Plaintiff's engineer, who had
made an examination and taken a number of elevations, tes-
tified that he believed that the ditch would carry through the
lots as much water as would pass through the culvert or
bridge a few feet above plaintiff's house; but he gave no fig-
ures on which to base his conclusion. Such an opinion can-
not avail against the testimony of the plaintiffs and their
numerous witnesses that by actual demonstration the ditch
failed to carry the water across the lots without overflowing.
The fact that the water ran over the banks on the premises
indicates that the ditch was lower there than at other places,
notwithstanding the mere opinion of any witness to the con-
trary, for the stubborn fact that water will seek its level and
run over a low place in the bank first must control. If the
plaintiff at the time of boarding the ditch and making it nar-
rower digged it deeper, this would not materially add to its
capacity if the additional depth which he gave it was lower
than the bottom of the ditch further down on its course. If
the ditch was only one and six-tenths feet deep at the lower
end of the flume, as estimated by the engineer, it may have
been made lower at that point and filled in with the wash or
sediment, which would have a tendency to bring it up on the
bottom to a level or uniform grade. If the water receded
after the ditch was cleaned and the moss cut out, this does
not prove that if the moss had not been cut out the water
would have overflowed if the ditch had not been changed
by the plaintiffs. If its capacity had been reduced one-half
across the lots by narrowing the ditch and lowering its banks,

it is quite possible that cutting out the moss would allow
whatever water was there to recede and flow through, but
still would not allow the passing of enough water to fill the
ditch to its original capacity, which defendant was entitled to
have flow without becoming liable.

It appears that at least a part of the injury for which the
plaintiffs demand the greater part of the damages sought to
be recovered was caused by their own acts in excavating the
cellar and placing the foundations of the house so dangerously
close to the ditch, or on such low and wet ground, that the
cellar was flooded and the earth soaked and softened under
the foundations by seeping and percolating water which might
have come into and stood stagnant in the cellar and softened
the ground and settled the foundations if the ditch had never
overflowed its banks.   If the defendant were holding for any
injury resulting to the plaintiffs from their own acts under
these circumstances, the owners of ditches that traverse the
lands of others would have little protection for their prior
rights.   If it be shown that some part of the water which
flooded the cellar or overflowed the ground came over the
banks of the ditch lower down than the plaintiffs' premises,
or over the banks on his lots, and that such overflow was not
caused by any acts of the plaintiffs in changing the size of the
ditch, still the burden of proof would be upon the plaintiffs
to show how much damage occasioned by such overflow was
caused by the defendant, which damage would have to be
separated from that caused by overflow from the ditch by
reason of the reduction of its capacity by the plaintiffs, for
which they could not recover.   There was a failure to make
any such showing on the trial, or to prove that the defendant
had caused damage in an amount as large as that allowed by
the judgment, and consequently the evidence does not support
the verdict.

It is urged that the plaintiffs failed to establish any title on
which they can recover because the moving of the track
amounted to an abandonment of the right of way and caused
a reversion of the land to the government, leaving no right in
the railroad company to convey to the plaintiffs' grantor.   It
is unnecessary to determine whether there is any merit in this

contention, because plaintiffs' possession of the lots during the time for which they claim damages was sufficient to enable them to maintain the action.

It is claimed that because the deed to one of the lots was taken in the name of Mrs. Malmstrom and the deed to the other lots was made to the husband there is a misjoinder of parties; but it is shown that the lot for which the deed was made to her was paid for with money earned after the marriage, and it has been held that under these circumstances, if. the deed is taken in the name of the wife, the land is still under the control of the husband the same as other community property standing in his name. (*Dimmick* v. *Dimmick*, 95 Cal. 323, 30 Pac. 547; *Estate of Boody*, 113 Cal. 682, 45 Pac. 858.) Hence if the right to sustain the action depended upon the deeds and was not supported by the joint possession, it would leave the action as maintainable by him, with her merely as an unnecessary or surplus party.

At the time the plaintiff was erecting the house, some objection was made by defendant to having it on the ditch, and he signed the following instrument:

"This agreement made this 6th day of February, A. D. 1905, by and between the People's Drain Ditch Company, the party of the first part, and A. A. Malmstrom, the party of the second part, witnesseth: That for and in consideration of the mutual promises herein made the said party of the first part agrees that the said party of the second part may maintain his structure now in course of erection in Sparks, Washoe County, Nevada, over and upon the ditch right of way of the said party of the first part so long as the same is not in the judgment of the said party of the first part detrimental or injurious to its interests, and the said party of the second part, and his successors in interest agrees to forthwith remove the same from and off of the said ditch right of way of the said party of the first part forthwith at any time the said party of the first part deems the maintenance of said structure to be detrimental or injurious to its interests and notifies him to do so.  People's Drain Ditch Company, by O. C. Ross, President. A. A. Malmstrom."

Plaintiff has testified that he did not understand its mean-

ing at the time he affixed his signature, and that he believed it was an agreement on his part to keep the ditch cleaned out under his building. The instrument was objected to as being without consideration and its admission refused. If it be contended that the right to the ditch on the one part and to the lots on the other is fixed by law, and that this paper was without consideration and did not constitute any conveyance or relinquishment, or even license, and whether it be taken as written or as he testified he intended, it was an admission by the plaintiff that the defendant was entitled to maintain its ditch across the premises as then existing, and as such admissible as the recognition of an obligation on the part of the plaintiff to change or remove any part of the building or obstruction placed by him which might impede the flow or injure the defendant.

Objection was taken because the court allowed Mrs. Malmstrom to testify that she was rendered ill by the stench and unhealthy odors arising from the stagnant water in the cellar and on the premises. This evidence was not allowed for the purpose of proving any special damage from sickness, and, whether recovery should be restricted to rental value as contended or not, we think with the limitation placed upon it by the court it was properly admitted under the allegation of the complaint that the "water stood stagnant in pools and caused an offensive stench and unhealthy and unsanitary odor to arise and surround and fill plaintiffs' dwelling-house, making life extremely uncomfortable and almost unbearable to the plaintiffs."

Upon a new trial the evidence relating to damage claimed for any vegetables or crops destroyed should be governed by the rule in *Candler* v. *Ditch Co.*, 28 Nev. 167, as far as the circumstances permit.

Plaintiffs' instruction No. 1, given by the court, "that it was not the duty of the plaintiffs to take any steps to prevent any threatened overflow over their property," given by the court without qualification, is objectionable in view of the evidence showing that the plaintiffs had reduced the capacity of the ditch, for it became incumbent upon them to restore the size of the ditch so that it would carry as much water

across their premises as it would have conveyed when they
went there.

The following, plaintiffs' instruction No. 12, is also objec-
tionable and should not have been given: "You are instructed
that the doctrine of contributory negligence is not applicable
to cases of this nature if you believe that the defendant had
knowledge of the danger to plaintiffs' premises, and could
have prevented the injury; and under such conditions no
duty would rest upon the plaintiffs to take steps to avoid the
consequences of defendant's acts or omissions."

If the doctrine of contributory negligence as understood in
its technical sense by lawyers is not applicable, it was unneces-
sary to refer to it in the instructions.   It may have tended to
confuse and mislead the jury.   Neither this nor any other
instruction should be given upon another trial which would
intimate to the jury that the plaintiffs would have to bear
themselves, and could not recover from the defendant for,
injury resulting from the acts of the plaintiffs in narrowing
the ditch or lowering its banks, or their negligence in failing
to restore its capacity so that it would carry as much water as
it did before plaintiffs changed its size; but, on the contrary,
it will be proper to instruct the jury that the plaintiffs cannot
recover for any injury which resulted from such acts of negli-
gence on their part.   The instruction follows too closely lan-
guage used in the opinion in *Shields* v. *Orr Ditch Co.*, 23 Nev.
354, which the court may not have felt at liberty to disregard
during the hurry of the trial, but a part of which, after careful
consideration, appears to be dictum or not applicable to the
facts in the present case.   It was said in the decision there:
"An instruction also was asked to the effect that the plaintiff
should have exercised ordinary care to have avoided the con-
sequences of defendant's acts, and failing to do so the parties
were in mutual fault.   The doctrine of contributory negligence
is not applicable to cases of this nature where the defendant
had knowledge of the defects of its ditch and could have pre-
vented the injury."

The facts are so materially different as to make the two
cases widely distinguishable.   There the water leaked through
the banks of the ditch on a rocky hillside and injured the

crops of the plaintiff, who had not narrowed or lowered, or reduced the capacity of, the ditch or caused or contributed to the damage, and who was not guilty of contributory or other negligence.

By narrowing or lowering or reducing the capacity in the dry season of the ditch involved in this case where it crosses his premises, and failing to restore its capacity at the time of high water, the plaintiff became guilty of negligence in not avoiding the consequences of his own acts, for which it would not be just to allow him to recover. When using the language quoted from the Shields case, Justice Belknap was considering a proposed instruction to the effect that the plaintiff should have exercised ordinary care to have avoided the consequences of the defendant's acts, and not the plaintiff's own acts, which are involved here, and which raise a very different question, and it was held that the instruction was properly refused.

The judgment and order of the district court are reversed, and the case is remanded for a new trial.