[Civ. No. 14264. First Dist., Div. One. Mar. 13, 1950.]

SAMUEL J. CHASE, as Executor, etc., Plaintiff and Appellant, v. IDA LEITER, Defendant and Appellant; BURDEITTA L. FORREST, as Executrix, etc., Respondent.

L. W. Irving for Plaintiff and Appellant.

Hagar, Crosby & Crosby for Defendant and Appellant.

BRAY, J.—In an action for declaratory relief filed by the executor of a will, in which the widow filed a cross-complaint,

plaintiff appealed from those portions of the judgment which were contrary to his contentions, and respondent Ida Leiter (the widow) appealed from the whole judgment.

## PLEADINGS

Plaintiff, executor under the will of decedent, George Leiter, brought an action for declaratory relief, asking the court to determine that in a joint will and agreement, decedent and his wife effectively transformed all their property into community property, and therefore the executors are entitled to its possession. Plaintiff asked title quieted in himself and the executrix for administration, and to carry out the terms of the will. Defendant, widow of the decedent, filed a cross-complaint asking the court to determine that the agreement was ineffective in attempting to transform certain jointly owned property into community property, and that therefore those properties were not subject to administration. At the trial the issue was raised and considered as to the right of the widow, upon distribution, to maintain possession, as against the trustees, of half of the community property.

The trial court found that the parties intended to transform all their property into community property, but were unsuccessful as to certain government bonds. It found that the parties intended only one-half of the community property to be held in trust by the trustees during the life of the surviving spouse, and that she was entitled to immediate possession of the other half, except such portion as might be necessary to pay administration debts and charges, although she could not dispose of or encumber it.

## FACTS

There is no dispute as to the facts. On December 5, 1946, George L. Leiter, of the age of 66 years, and Ida Leiter, his wife, of the age of 68 years, owning property of the value of approximately $333,000, made and executed a joint and mutual will. The parts important here follow:

"WE, GEORGE L. LEITER and IDA LEITER, husband and wife, . . . being desirous of ultimately disposing of our property including all our community property and all our respective separate properties which we or either of us may own at the time of death, according to a plan and program for that purpose which we have heretofore orally agreed upon and jointly adopted, do hereby make, publish and declare this instrument to be jointly as well as severally our Last Will and Testament and the Last Will and Testament of each of us . . .

"SECOND: We hereby declare that although each of us has from time to time had and received property which was or is, or might be considered to be, separate property of one or the other of us and, likewise, we have taken and held and now hold property in joint tenancy with right of survivorship and bank accounts and other items of property owned by or payable to either of us or to the survivor, nevertheless, our property has, during our marriage, become so intermixed that it would be impractical, if not impossible, to trace the strict ownership of, and title to the various items thereof so as to distinguish separate property from community property and we therefore agree and stipulate that all said property is and shall be deemed to be community property."

In paragraph "THIRD" they give certain United States bonds to their daughter, grandson, and others. "The foregoing bequests shall take effect and shall vest in the said respective beneficiaries as of the date of the death of the one of us who shall die first, and are to be delivered in proper course in the administration of the estate of the one of us who shall die first."

"FOURTH: We and each of us give, devise and bequeath the remainder of our bonds, all our real estate, cash in hand, and all the rest, residue and remainder of our estates of whatsoever kind or nature, whether real, personal or mixed, and wheresoever situate, including all separate property, community property, and property held jointly, to our daughter, BURDEITTA L. FOREST, and SAMUEL J. CHASE as Trustees, with the powers and duties hereinafter set forth, for the benefit of the survivor of us, our said daughter, BURDEITTA L. FOREST, and our grandson, WILLIAM GEORGE FOREST, as follows: . . .

"Said trustees shall hold said property with full power to receive and collect the rents, issues and profits thereof and, also, all other moneys becoming due whether by maturity of bonds or other securities, or otherwise; to lease real property, or any portion thereof, provided always that said Trustees shall not do anything in violation of the provisions of Section 2261 of the Civil Code of California.

"Our daughter, BURDEITTA L. FOREST, being familiar with our real property and its condition and the rentals and tenants, is particularly instructed to attend to the collection of rentals and the transaction of such other business as may be necessary in connection with rentals and tenants.

"Said Trustees shall pay the expenses of said trust and shall

use and pay the net income from said trust estate for the use, benefit, maintenance and support of the survivor of us, our daughter, BURDEITTA L. FOREST, and for the use, benefit, maintenance support and education of our said grandson, WILLIAM GEORGE FOREST, until he shall reach the age of 50 years as follows:

"Said Trustees shall pay the net income from said trust estate monthly to the survivor of us during the remainder of the life of such survivor, and after the death of such survivor" the trustees shall pay $200 per month to their daughter for life and a like sum to their grandson until he reaches the age of 50 years. The trustees are given authority to pay from principal if the net income does not provide sufficient to pay these sums per month.

"FIFTH: We and each of us declare that in consideration of the benefit which the survivor of us shall derive from this mutual Will and the reciprocal provisions therein contained, as well as in consideration of the ultimate benefit which will be derived by our said daughter and our said grandson for whose benefit, among other persons, this Will is particularly made, this Will is and shall be our Last Will and Testament and we and each of us agree that we will not hereafter revoke nor attempt to revoke this Will directly nor indirectly, nor will we nor either of us make any subsequent Will nor Codicil, nor will the survivor of us during the period of such survivorship dispose nor attempt to dispose of any of the corpus or principal of any of our said property, and we and each of us further declare that it is our intention and agreement that this Will shall be presented for probate and its admission to probate be requested both as the Will of the one of us who shall die first and, also, as the Will of the survivor of us without change, modification or alteration in any manner whatever."

At the time the will was executed the Leiters owned the following real and personal property: (1) bank account, bonds, business, automobile, stocks, etc., and certain real property—all standing in the name of George L. Leiter; (2) real property standing in the names of George L. Leiter and Ida Leiter, his wife, as joint tenants; (3) savings and commercial bank accounts which stood in joint tenancy in the names of George L. and/or Ida Leiter; (4) United States of America Series G bonds of the face value of $65,000 which stood in the names of George L. Leiter or Ida Leiter as joint owners; (5) Series G bonds of the face value of $26,000 which stood

in the name of George L. Leiter payable on death to Ida Leiter; (6) certain real property which stood in the name of Ida Leiter; (7) seven life insurance annuity contracts which provided in the aggregate for the payment of $304.62 per month to George L. Leiter and upon his death to Ida Leiter. Two of these contracts provided for payments after death of Ida to Burdeitta Forrest, the daughter of the parties.

George died on the 23d day of January, 1947. The will was offered for probate in the Superior Court in Alameda County and was admitted to probate. Samuel J. Chase and Burdeitta Forrest qualified as executor and executrix. Thereafter, Samuel J. Chase, as one of the executors, filed an action against Ida, the surviving widow, and Burdeitta Forrest. The latter was named a defendant on the basis that her individual and personal interest and property rights were adverse to the things sought to be accomplished by the action, and that as one of the executors she refused to be joined as a party plaintiff. Ida filed an answer and cross-complaint, and amendments thereto, in which she sought to quiet her title to all of the real and personal property which stood in the name of Ida, or in the names of George and Ida as joint tenants, or joint owners and/or in the name of George payable on death to Ida.

The trial court determined that the will of the parties was a contract, and that upon its execution all of the property, except the government bonds which were held in joint tenancy and/or which were payable on death to Ida, became community property of said George and Ida; that the contract was ineffecual to transmute said bonds into community property *only* because the regulations of the United States Treasury Department prohibited an *inter vivos* transfer; that as a contract it was effective at the date of its execution, as the will of George it was effective as of the date of his death, and as the will of Ida it was to become effective upon her death; that the executors were entitled to immediate possession of the government bonds for the purpose of carrying out the provisions of paragraph "THIRD" of the will, and that after carrying out said provision, Ida was entitled to the possession of the remainder of the bonds, providing that during her lifetime Ida had no right to dispose of or encumber the corpus or any interest in the corpus of the bonds, except that she could surrender them for payment, but if so surrendered during the pendency of the probate proceedings, the executors were entitled to receive from Ida one-half of the proceeds; that

as to the community property, one-half of it was subject to the testamentary disposition of George, was disposed of by his will and is subject to administration in the hands of the executors; that said executors are entitled to immediate possession thereof; that the other one-half of the community property belonged to defendant Ida, as surviving widow, subject to debts, expenses of administration, and taxes properly chargeable thereto, and that Ida was entitled to the possession of her one-half of the community property and was the owner of it, subject to the terms and conditions of the will, but had no right to encumber or dispose of the corpus of said community property during her lifetime, or in any other manner than as provided in said will.

### Separate Appeals

Plaintiff executor appealed from those portions of the judgment which (1) exclude from community property status the government bonds and (2) limit the executors' rights of possession to one-half of the community property.

Defendant Ida also appeals, contending that she is the owner of and entitled to the possession of the following: (1) the moneys which had been withdrawn from the joint bank accounts of Ida and George and redeposited in the joint bank accounts of Ida and Burdeitta Forrest prior to the death of George; (2) the United States government bonds which stood in the names of George or Ida, and those which stood in the name of George payable on death to Ida; (3) the real property which stood in the name of George and/or Ida as joint tenants, and the real property which stood in the name of Ida at the time of George's death; (4) the seven annuity contracts; (5) one-half of all community property at the time of George's death; and that she is entitled to such ownership and possession, subject only to the payment of her proportionate share of expenses of administration, taxes, etc., in the estate of George, subject to the management and control by her of said property in accordance with the terms and conditions of the will, and that as to said property and her one-half interest in the community property the same should not vest in the trustees under the will until her death.

### Can Plaintiff Bring This Action?

■ Respondent Ida contends that plaintiff, as executor, is not a proper party to bring this action, citing 11B California Jurisprudence, section 969, page 396, to the effect that after final distribution or where the ultimate trust is for the heirs

of a grantor, and not for himself, the heirs and not his representative should sue; *Lee* v. *Zimmerman,* 75 Cal.App. 617 [243 P. 62], which was a suit to enforce an oral contract to make certain testamentary disposition of property; and *McCabe* v. *Healy,* 138 Cal. 81 [70 P. 1008], a similar type of action. In neither of those cases was the question of the interpretation of a will involved. A third case, *Field* v. *Andrada,* 106 Cal. 107 [39 P. 323], has been expressly overruled. (*Collins* v. *O'Laverty,* 136 Cal. 31, 33 [68 P. 327]; *Rice* v. *Carey,* 170 Cal. 748 [151 P. 135].) In our case the will has to be construed; the questions of what property the executors are entitled to the possession of, and what property belongs to the trust, are involved. In *In re Heydenfeldt,* 117 Cal. 551 [49 P. 713], referring to the right of executors to appeal from an order of the probate court requiring them to redeem certain land from a foreclosure sale, the court said (p. 553): "An administrator, or an executor, is a trustee of an express trust: He is authorized to sue or to be sued without joining with him the beneficiaries of the trust, but the suits which may thus be brought are suits affecting the trust, and not those in which he is individually interested. Among his beneficiaries are creditors. He not only may, but it is his duty to, defend the estate from all unjust and illegal attacks made upon it which affect the interests of heirs, devisees, legatees, or creditors. He cannot be kept out of such litigation upon the claim that he is not personally injured."

In *Rice* v. *Carey, supra* (170 Cal. 748), in an action to quiet title to real property brought by the executors, the court sustained the right of the executors to sue, even as against a contention that the executors could only maintain an action to recover real property alleged to belong to the estate upon a showing that the property was needed for purposes of administration.

In *Union Nat. Bank* v. *Jessell,* 358 Mo. 467 [215 S.W.2d 474], there had been a joint and mutual will in which both spouses agreed that all of their property should go into a testamentary trust. There were some government bonds which bore the names of the deceased husband and three children, each of the latter being the second name on certain bonds. After the death of the husband, in an action brought by the executor for an instruction as to the proper distribution of the estate and particularly for a declaration of whether these bonds were the individual property of the three children or

the property of the trust created by the will, the court held that the action by the executor for declaratory relief was proper, and further stated (p. 476 [215 S.W.2d]): "It was only by reference to the joint and mutual will, pleaded and in evidence, and the attendant circumstances that it could be justly determined and declared whether the estate or the children were entitled to the bonds and it was only by relief analogous to specific performance that the court could adequately declare and enforce the rights of the parties. It follows, in all the circumstances of this case, that the court had jurisdiction to construe the joint and mutual will and enforce compliance with its applicable provisions." This action by the executor for declaratory relief was proper.

## COMMUNITY PROPERTY

Respondent contends that the following property either could not be converted into community property or had lost its status as such at the time of the husband's death: (a) joint tenancy bank accounts; (b) certain United States bonds; (c) real property of record in joint tenancy; and (d) annuity contracts.

(a) Joint Tenancy Bank Accounts.

At the time of the making of the will these accounts were in the joint tenancy name of George and/or Ida. On January 15, 1947, 12 days prior to George's death, Ida withdrew $94,800 of these moneys and redeposited them in bank accounts with several banks in the joint tenancy accounts of herself and/or Burdeitta L. Forrest. The court found that in so doing Ida was acting contrary to and in disregard of her contract with decedent set forth in the will, and that by reason of the contract contained in the will all joint tenancy bank accounts became and remained community property, subject to the trust in the will. That a husband and wife by a joint will may convert joint tenancy property into community property is well established in California. The leading case is *Estate of Watkins*, 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1]: "It is well settled that a husband and wife may agree with respect to the character of the property which they hold and that they may transmute their property from one status to another by an agreement which ordinarily need not be executed with any particular formality. [Citations.]

"A single written instrument may constitute both a will and a contract [citations], and we believe that the declarations contained in the joint and mutual will must be held to have

constituted an agreement between the spouses fixing the status of their property as community property.'' (P. 799.)

Respondent contends that the rule that a husband and wife by agreement may change the form of their properties into community property has been followed only in divorce cases, with the single exception of *Estate of Watkins, supra* (16 Cal.2d 793). Such contention overlooks such cases as *Estate of Sehabiague,* 47 Cal.App.2d 793 [119 P.2d 30], and *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390]. In these cases the agreement was an oral one. In the Wilson case the court said (pp. 126-127): ''It is now too well settled to justify more than the citation of the authorities that in spite of the mold into which a deed would seemingly press a title, either because of the intent with which the deed was made [citation], or made and received [citation], or because of an oral agreement between a husband and wife, carried into effect, determining their respective interests in real estate [citations] property which, measured by the deed, would not be community property, nevertheless may be just that.'' At oral argument respondent strenuously urged that we over-rule *Estate of Watkins, supra* (16 Cal.2d 793). This we cannot do, first, because as an intermediate court we have no such power, and secondly, because the rule therein stated is good law.

The trial court interpreted the will without the aid of extrinsic evidence, and as held in *Estate of Platt,* 21 Cal. 2d 343 [131 P.2d 825], and *Estate of Sahlender,* 89 Cal.App. 2d 329 [201 P.2d 69], it follows that its interpretation is before this court as a matter of law; that this court must interpret it for itself, and that the trial court's interpretation, even if possible or even reasonable, is not binding on us. A mere reading of the will shows that it was the intent of both parties to transmute all their property, whether separate or held in joint tenancy, into community property. It would be difficult to find a clearer statement of their intention so to do, than appears in the will. They had the right to so change and they did. The will provides: ''. . . nor will the survivor of us during the period of such survivorship dispose nor attempt to dispose of any of the corpus or principal of any of our said property . . .'' While this clause refers to the period of survivorship, it is apparent from the whole will that it was the intention and the agreement of the parties

that the same agreement not to dispose of any of their property was to apply to the period prior to the death of the first one to die. The will refers to their "being desirous of ultimately disposing of" all their property, "according to a plan and program for that purpose" to which they had agreed. They give, devise and bequeath to the trustees "all our real estate, cash in hand, and all the rest, residue and remainder of our estates of whatsoever kind or nature, whether real, personal or mixed, and wheresoever situate, including all separate property, community property, and property held jointly." Therefore, when respondent removed the moneys from the bank accounts and placed them in accounts jointly with her daughter she was violating the express agreements made by her in the will. The will was a contract which became effective as soon as executed. (See *Estate of Watkins, supra* (16 Cal. 2d 793).) In contending that she obligated herself only to refrain from disposing of the property during survivorship, and not prior thereto, respondent relies on *In re Glen,* 247 App.Div. 518 [288 N.Y.S. 24]. There the spouses executed an agreement in which the husband agreed to leave the bulk of his separate estate to the wife. The instrument was itself a will and the husband promised not to revoke it. Thereafter and before he died the husband placed certain funds in a joint tenancy account with his brother. The court held that this action was not in violation of the agreement, since the latter had said nothing about what the husband could do with his property during his life; that the husband had kept his promise by not revoking the will and by leaving to the wife the agreed portion of his estate at the time of his death. The form of agreement in that case was different from that in our case. Here the parties agreed that the then joint tenancy accounts were to be community property, and as such respondent had no right to withdraw them and redeposit them in joint tenancy with her daughter. While respondent contends that the agreement had no effect until after the husband died, the whole tenor of the instrument is that it was to take effect at once. Had there been a divorce proceeding prior to the husband's death there can be no doubt that a court would have been required to consider these moneys, as well as all other property of the spouses, community property.

The joint and several will in *Estate of Rolls,* 193 Cal. 594 [226 P. 608], upon which case respondent relies, and in which the court held that the wife could revoke it after the husband's death and dispose of her one-half of the community property,

did not contain an agreement, as here, not to revoke, nor did it constitute, as here, a contract. It was expressly so held in *Rolls* v. *Allen,* 204 Cal. 604 [269 P. 450]. The court, however, in the latter case, recognized that the parties could have made a binding agreement not to revoke, had they so desired, for the court said (p. 607): "It is undoubtedly true that one may make a contract binding upon himself to make a particular testamentary disposition of his property and he may validly renounce the power to revoke his will, and equity will enforce such an agreement and not suffer him to defeat his obligation by the making of another will. The same rule applies to the case of mutual wills as equity likewise will assume enforcement of the same when attempt is made by the survivor to impair the terms thereof by subsequent testamentary disposition." As said in 1 Annual Survey of California Law, page 110: "The cases of the last year [1948-49] continue to reflect the view that . . . agreements or understandings entered into during marriage as to property acquired or to be acquired may be . . . effective to constitute it community property . . ." The trial court was correct in finding that the $94,800 was community property subject to the terms of the will.

(b) United States Bonds.

■ The court found that the Series G bonds standing in the name of George or Ida as joint owners, and in the name of George payable on death to Ida, were not transmuted into community property (although it found that the parties intended by the will to so transmute them) solely because it claimed that the regulations of the United States Treasury Department prohibited an *inter vivos* transfer. Respondent contends that she is the owner of those bonds.

Government bonds provide for a type of coownership similar to joint tenancy. Whether the bonds are payable to "A or B," or "A, payable on death of A to B," it is clear that the government does not want A wrongfully to defeat the rights of B. There are many cases holding that as between B and the estate of A, B is entitled to payment. The leading California case is *Conrad* v. *Conrad,* 66 Cal.App.2d 280 [152 P.2d 221], which contains a discussion of the nature of the bonds and the effect of the Treasury Department regulations. Another case on the same subject is *Davies* v. *Beach,* 74 Cal.App.2d 304 [168 P.2d 452]. Such cases involve no voluntary agreement between A and B that someone other than B shall take, upon the death of A.

The applicable regulations include the following:

*"Sec. 315.13 Judicial proceedings (judgment creditors, trustees in bankruptcy, receivers of insolvents' estates and conflicting claimants).*—A claim against an owner or coowner of a savings bond and conflicting claims as to ownership of or interest in such bond as between coowners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(1) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary.

"(2) A judgment creditor, a trustee in bankruptcy or a receiver of an insolvent's estate will have the right to payment (but not to reissue) and a judgment creditor will be limited to payment at the redemption value current thirty days after the termination of the judicial proceedings or current at the time the bond is received, whichever is smaller.

"(3) . . . A divorce decree ratifying or confirming a property agreement between husband and wife or otherwise settling their respective interests in savings bonds, will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer for the purpose of this section."

This last sentence is important. If the parties voluntarily enter into an agreement concerning interests in the bonds, which agreement is approved in a divorce decree, the government will recognize such an agreement. It is logical that if the parties voluntarily agree to a particular treatment of bonds and such agreement is approved in this action, the government could and would have no objection. The principal thing that the government wants to prevent is A giving away B's rights without B agreeing to it.

The regulations cannot be used to perpetrate a fraud. The cases have not hesitated to impose constructive trusts on the proceeds in order to achieve a fair result. As was said in *Katz* v. *Driscoll*, 86 Cal.App.2d 313 [194 P.2d 822], after a review of the Conrad and other cases (p. 320): "While the cases above cited hold that as between the government and the survivor or beneficiary of the bonds and all other claimants

the courts will recognize only the survivor or beneficiary, there is no case that holds that where the bonds are the result of fraud, the persons defrauded cannot pursue the proceeds of such bonds in the hands of one who is a party to the fraud.''

In the following cases it was held that the treasury regulations did not prevent a court of equity from ordering the named coowner or beneficiary to pay over the proceeds of the bonds to some other person: *Succession of Geagan*, 212 La. 574 [33 So.2d 118]. (Deceased used community funds to purchase bonds in name of son. Son ordered to turn over half of proceeds to widow.) *Olsen* v. *Olsen*, 70 N.Y.S.2d 838. (Joint and mutual will held to be a binding contract. Surviving husband was held bound to conform to it, even with respect to property he took as surviving joint tenant or surviving coowner of government bonds.) *United Nat. Bank* v. *Jessell, supra* (215 S.W.2d 474). In this case, mentioned previously, the spouses executed a joint and mutual will in which it was agreed that the survivor would leave his property to a trust set up by the will. The husband survived and during his survivorship purchased government bonds in the name of himself and some children. In spite of the treasury regulations, the appellate court affirmed a judgment ordering the children to cash the bonds and turn the proceeds over to the executor, saying: ''The court has decreed that the named payees cash the bonds and deliver the proceeds to the executor in accordance with the will and there is nothing in this phase of the decree contrary to either the laws of the United States or the regulations of the United States Treasury Department. Those laws and regulations do not prevent the declaration of a resulting trust in bonds purchased in fraud of marital rights. [Citations.] And they do not prevent the recovery of the proceeds of bonds if they have been purchased with fraudulently acquired funds or funds expended in fraud of creditors. [Citations.] In this connection it is not necessary to characterize the conduct of the testator. It is sufficient to say that the testator was obligated by the compact of the joint and mutual will with his wife to devise and bequeath their property to the trust regardless of his subsequent good intentions and changed circumstances. The purchase and gift of the bonds to the children was in direct violation of that compact.'' (P. 477 [215 S.W.2d].)

In view of the above decisions, the trial court gave too much effect to the treasury regulations. They would not have pre-

vented an order that the surviving widow, respondent, cash the bonds and turn the proceeds over to the executor, in view of the finding by the trial court that "The parties to said contract intended to transmute all of the United States Government Bonds described in Schedules 'E' and 'F' into community property . . ." Even if the regulations prevent the court from holding that title to the bonds was changed, the court can order the widow to act so as to carry out the agreement she entered into.

Respondent, in her reply brief, cites the case of *Kauffman* v. *Kaufmann,* 93 Cal.App.2d 808 [210 P.2d 29]. The case concerns United States war risk insurance. The holder of the policy and his wife entered into a property settlement agreement in which he promised that if they were divorced he would name their children as beneficiaries. They were divorced and he changed the beneficiaries accordingly, but thereafter he married again and named his new wife as beneficiary, in violation of the agreement. The government, upon the death of the policyholder, began making payments to the widow. The children, born of the policyholder and the former wife, with whom he had executed the agreement, sued to impress a trust upon the proceeds. The court held in favor of the widow. The decision is not controlling in our case, however, since it pertained to insurance proceeds, which are exempt from creditors, taxation, etc., under the following provision: "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." (49 Stats. 609, 38 U.S.C.A. § 454a.) As the court said: "The provision in section 454a that the payments and benefits due or to become due are exempt from taxation and the claims of creditors, and are not subject to legal or equitable process indicates that Congress intended to control the title to such payments and benefits *both before and after payment.*" (P. 814; emphasis added.) There is no such control of the proceeds of government bonds, as has been seen.

(c) Real Property in Joint Tenancy.

The right of the parties to transmute real as well as personal property held in joint tenancy into community prop-

erty and the fact that here by a binding contract they did so, has been fully covered under the heading (a) Joint Tenancy Bank Accounts. The court properly found that the real property had been so transmuted.

(d) Annuity Contracts.

█ The court found that the seven annuity contracts with various insurance companies, six in the name of the husband, one in the name of the wife, became community property and were subject to the terms of the will. Respondent contends (1) that the parties did not intend these contracts to be so converted; and (2) that they could not be converted without the consent of the respective insurance companies who were parties to the respective contracts.

(1) As to the first contention, the will includes ''other items of property owned by or payable to either of us or to the survivor . . .'' It is obvious from the terms and plan of the will that the parties intended all of their property, no matter of what kind, to be covered by the will. This matter has been considered extensively under other headings. A somewhat similar situation is disclosed in *Sullivan* v. *Union Oil Co. of Cal.*, 16 Cal.2d 229 [105 P.2d 922]. There, the wife was named as beneficiary of a ''provident fund'' maintained by the husband's employer. Prior to his death, during the pendency of divorce proceedings, the parties executed a property settlement agreement in which each waived all right to the estate of the other left at the time of death and agreed that henceforth they would have, as to each other, the status of single persons. On the husband's death, the wife claimed to be still entitled to the provident fund, as named beneficiary. The court held that under the agreement she had waived her right to the fund. While the agreement there contained the language that the wife accepted the provisions of the agreement made for her in full satisfaction of her right to the community property (a provision which does not appear in the will in our case), nevertheless, the case is strong support for the construction given to the intention of the parties here.

█ (2) Respondent contends that including these contracts in the provisions of the will added an additional burden on the insurance companies without their consent, and that the annuity contracts provided the only method by which they could be assigned. So far as the method of transfer of the annuity contracts not being that provided therein, the following language from *Sullivan* v. *Union Oil Co. of Cal.*,

*supra* (16 Cal.2d 229), is appropriate (p. 237) : ''Neither insurance policies nor rights arising thereunder are either sacred or 'untouchable'. As far as present consideration is concerned, an insurance policy is but a form of contract. An insurance policy in legal contemplation is property, which can be sold, assigned or bequeathed by the owner thereof.'' To the same effect, *Mutual Life Ins. Co.* v. *Henes,* 8 Cal.App. 2d 306 [47 P.2d 513]. An annuity is a chose in action assignable by the annuitant. (3 C.J.S. 1383.) In *Chilwell* v. *Chilwell,* 40 Cal.App.2d 550 [105 P.2d 1222], the property settlement agreement between husband and wife provided that the husband would designate the children as beneficiaries of an insurance policy, which he did not do. Upon his death the children sued the executor to establish their rights under the agreement. In holding for the children the court, referring to a contention similar to the one here, said (p. 553) : ''The appellant contends that since the insured had not changed the beneficiary in the manner provided for in the policy and since the original beneficiary died before the insured, the insurance was payable to his estate, and that nothing in connection with the divorce proceeding changed this result or affected this legal situation. We are here concerned, however, not merely with the terms of the insurance contract, but with the terms and effect of a property settlement between parties to a divorce proceeding which was carried into and made a part of a judgment of divorce. . . . This property settlement agreement was entered into by all of the parties who had any interest in the proceeds of the policy, and the making of such an agreement has frequently been held to be, in effect, an equitable assignment of such insurance money.''

The burden which respondent contends is placed on the annuity companies, not contemplated by them in their contract, is that, under the terms of the will, the payment might have to be divided between two persons, while the annuity contracts provide for payment to only one person, i. e., the survivor. If this is a burden, it is of such a minor character as not to bring this case within the principle that a third party to a contract may not be required to assume an additional burden without his consent. Moreover, if this were a burden, it could be relieved by the company making one payment direct to the trustees, who would properly apportion it.

### Right to Possession by Executors

The trial court found that possession of one-half of the community property might be held by the widow, and all

of the government bonds except those specifically bequeathed, subject, however, to the right of the executors to receive from her such portion thereof as is necessary to pay the portion of the debts of decedent, expenses of administration, and taxes chargeable by law against that one-half of the community property, and subject also to the requirement that she not encumber or dispose of the corpus of any of such property other than as provided in the will. The action of the trial court in awarding the widow possession of any of the community property as against the executors was erroneous. All of the community property is subject to administration in the estate of the husband. (See *Colden* v. *Costello,* 50 Cal.App.2d 363 [122 P.2d 959].)

Having in mind that both spouses were getting along in years, that they say in their will that the executrix and trustee daughter is familiar with ''our real property and its condition and the rentals and tenants'' and ''is particularly instructed to attend to the collection of rentals and the transaction of such other business as may be necessary in connection with rentals and tenants'' (a clause which indicates that she rather than the survivor was to take possession of the real property, at least), and all the other terms of the will, the most reasonable interpretation is that the parties intended that all their property should be community property to be held in their lifetime for the trust which would take effect upon the first death.

### RIGHT TO POSSESSION BY TRUSTEES

The court found that the widow was entitled as against the trustees to the possession of all the government bonds (except those bequeathed to individuals) and to one-half of the community property, and to one-half of the income from the bonds and community property. Both parties, while expressing some doubt upon the right of the court in this action and before distribution to interpret the will on the question of whether the widow on distribution will be entitled as against the trustees to the possession of any of the property, have requested that if possible an interpretation be made. This is an action for declaratory relief, in which the court has broad powers. Section 1060 of the Code of Civil Procedure provides: ''Any person interested under a deed, *will* or other written instrument, or under a *contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property* . . . may, in

cases of actual controversy relating to the legal rights and duties of the respective parties," bring an action "for a declaration of his rights and duties in the premises" as well as a determination of the construction or validity of the instrument in question. ". . . the court may make a binding declaration of such rights or duties, *whether or not further relief is or could be claimed at the time.*" (Emphasis added.) Here, there is no question that there is an actual controversy relating to the rights and duties of the various parties. They are all before the court. (The same persons who are executors are also named trustees.) In interpreting the will, and the contract contained therein, the question of the rights of the widow and the trustees after distribution naturally arises. Many of the matters determined now are necessarily included in the determination of the rights of the trustees as opposed to the rights of the widow. Acting now will avoid the necessity of another proceeding after distribution. The relief provided by section 1060 of the Code of Civil Procedure is broad enough to permit this court to determine now the rights after distribution of the trustees and the widow.

 It is contended that because in paragraph "THIRD" (the one specifically bequeathing $43,000 government bonds) there is an express provision that these bonds shall vest in the beneficiaries as of the date of the first death, and there is no similar provision in the rest of the will concerning the vesting of the trust, that necessarily it was intended that the trust should not vest until the death of the survivor. However, taking the will by its four corners, it is plain that on the first death the trust was to take effect. Thus, it says (paragraph "FOURTH") that the trustees "shall use and pay the net income from said trust estate for the use, benefit, maintenance and support of the *survivor* of us . . ." (Emphasis added.) Again, "Said Trustees shall pay the net income from said trust estate monthly to the survivor of us during the remainder of the life of such survivor . . ." Each of the spouses gave all their property to the trust. If the trustees do not have the custody and control of all the trust property then they could not comply with the requirement that they pay all the net income to the survivor. In paragraph "FIFTH" the survivor agrees not to dispose or attempt to dispose of any of the corpus or principal of any of the property. The widow contends that this provision shows that the survivor was to have control of her half of the community property during her lifetime. Such provision must be considered with the other

provisions of the will showing that the trust was to operate immediately upon the first death. All the portions of the will must be considered together, and when so viewed, they comprise a harmonious pattern of testamentary disposition under which husband and wife desired their holdings to be administered in trust, commencing upon the first death. The will shows definitely that the trustees were to maintain the property intact so as to conserve it for the benefit of the survivor in his lifetime and of the daughter and grandson. This could not be done if the survivor was to retain any portion of it.

### HAS THE WIDOW THE POWER TO ENCUMBER ONE-HALF OF THE PROPERTY?

Inasmuch as we have held that the widow has no right to the possession of any of the property, it necessarily follows that she has no power to encumber it. She concedes that the trial court correctly held that she had no right to dispose of any of the property, but contends that the court erred in preventing her from encumbering it. It necessarily follows from her inability to dispose of the property that she has no right to encumber it, for, if encumbered, the holder of the encumbrance, under certain conditions, could foreclose and sell the property, and hence the widow could bring about indirectly that which was directly prohibited.

### INTEREST

Respondent contends that the trial court erroneously decreed that she pay the executors interest on the government bonds which she is ordered to return to them. Paragraph 16 of the judgment provides: "Said executors are entitled to interest at the legal rate on any and all of the property designated in paragraph 12th hereof from the date of service of the Notice of Entry of Judgment herein to the date of payment or delivery of said property to said executors . . ." Included in paragraph 12 are the bonds and the interest received by the widow thereon since the death of decedent. Under the circumstances of this case, when the widow surrenders the bonds (or the amounts paid thereon by the government as hereinafter set forth) and all interest paid and hereafter payable on the bonds, it would be inequitable to require the widow to pay interest on the face or actual value of the bonds. The judgment, if it meant to include such interest, which is doubtful, should be amended accordingly.

The case is remanded to the trial court with instructions to modify its findings of fact, conclusions of law, and judgment in accordance with the views herein expressed, namely: all of the property referred to herein is community property; the executors are entitled to the possession of all of said community property; if the widow cashes the government bonds and delivers the proceeds to the executors, the provision for payment of interest on the value of the bonds is stricken from the judgment; on distribution, the trustees will be entitled to possession of all the community property. The judgment as so amended is affirmed. Each party will bear his own costs.

Peters, P. J., and Schottky, J. pro tem., concurred.