[Civ. No. 6641. Third Dist. Nov. 18, 1941.]

Estate of THOMAS SEHABIAGUE, Deceased. AMELIE R. SEHABIAGUE, Respondent, v. HONORE A. SEHABIAGUE, Appellant.

O'Gara & O'Gara, Gerald J. O'Gara and John O'Gara for Appellant.

Franklin T. Poore for Respondent.

THE COURT.—This appeal arose from a proceeding instituted by Amelie R. Sehabiague, the widow, to determine the community character of the property and who was entitled to distribution of the estate of her husband, Thomas Sehabiague, who died intestate on November 10, 1935.

The petition revealed that Thomas Sehabiague and Amelie R. Garnaud were married on the 28th day of May, 1908, and remained husband and wife for some 27 years, and until the husband's death. The next of kin and heirs at law of deceased were his wife Amelie, Honore A. Sehabiague, a son by a prior marriage, and Thomas Sehabiague Jr., a son of the deceased and Amelie.

It was further alleged that all of the property of which the deceased died possessed (with the exception of certain personal property, one-half interest in an apartment house at 315 Hyde Street, and also a store building at Hayes and Central Avenue) was acquired after the marriage of deceased and the petitioner, and was community property at the time of his death, and by reason of the law one-half should be assigned to petitioner, and an undivided one-half was subject to distribution.

The matter was heard and a decree was entered wherein the court found, among other things, that the property known as 530 Stockton Street, together with the furnishings therein, as well as approximately $3000 remaining unpaid on a loan to a brother of deceased, was community property and vested in petitioner. As to certain other property known as 315 Hyde Street and the furnishings therein, and the Hayes and Central Store, together with a bank account in the sum of $1092.16, and certain articles of jewelry, it was found that they belonged to decedent, and that upon his death his interest in these properties vested in the widow and the two sons, share and share alike.

While the only controversy presented is as to whether or not there is sufficient evidence to support the finding of the community interest as to the property at 530 Stockton Street, together with the furnishings, and the unpaid balance upon

the loan to the brother of the deceased, it becomes necessary to examine in some detail the activities that went into the building up of the entire estate.

Thomas Sehabiague came to San Francisco in 1887 from France, he being then about 17 years of age. His brother, a few years his senior had preceded him here. The two young men were frugal and industrious, and shortly after Thomas arrived they opened a French Bakery which they conducted as partners until they dissolved their partnership in 1909, Thomas Sehabiague then receiving as his share the sum of $2300.

At the time of the San Francisco fire in 1906 they owned a three-flat building at 323 Church Street, unimproved property at 2040 Hyde Street, and a three-story apartment house at Greenwich and Jansen Streets. In the fire the Greenwich Street property was destroyed. A few years later the brothers acquired a piece adjoining their original lot at Jansen and Greenwich Streets and improved both pieces of land. This property was in 1925, with a cash payment of $12,500, exchanged for 315 Hyde Street. An undivided one-half of this property the court found to be the separate property of decedent, and we are not particularly concerned with it here.

The unimproved property at 2040 Hyde Street was, in 1913, sold, and Thomas received for his interest $1950.

In 1913, a few months after the sale of the Hyde Street property Thomas and his brother purchased a three-story apartment house at 993 Haight Street. This property they held for about two years and then exchanged it for property in Palo Alto. In 1925 Arnaud Sehabiague sold his undivided one-half interest in the Palo Alto property to his brother Thomas. Then Thomas and his wife conveyed the Palo Alto property for a two-flat building on Thirty-third Avenue, and in 1926 this was turned in, with other property, on the deal for the Stockton Street property.

The Stockton Street property, which constitutes the principal asset of the estate, and which the trial court found to be community property, was conveyed to Thomas and Amelie Sehabiague in 1926, in consideration of the conveyance to the seller of the property referred to herein as 1453 Hyde Street, the property at 1360 Hyde Street, the Thirty-third Avenue property, and the assuming by Mr. and Mrs. Sehabiague of a deed of trust for $70,000, which at the death

of Thomas Sehabiague had been reduced to $32,500. During the period of their ownership they had paid some $19,400 in taxes, in addition to the interest on the loan.

It would therefore appear that during some 17 or 18 years Mr. and Mrs. Sehabiague had traded, sold and exchanged some 10 or 12 pieces of property until their interests merged in the apartment property at 530 Stockton Street, worth $42,500. In the meantime decedent held the Greenwich and Jansen Streets property, which the trial court has found to have been separate property, and in 1926 property on Chestnut Street was purchased by Thomas Sehabiague with separate funds. It also appears that during their married life the husband earned about $3000, and the wife earned $2100, and she had made a cash contribution of about $1800 upon the purchase of their first piece of property shortly after their marriage.

What part therefore, if any, of the Stockton Street property was community property? The trial court has found the entire interest was community, and we are satisfied, after a careful study of the record, that by the planning and saving of this man and his wife over a period of 27 years, the court has correctly so decided.

In fixing the community interest of a man and wife, where that relationship had extended over a considerable period of their active lives, courts cannot determine the issue from a computation of possible increase of property originally held by one of the parties at the date of marriage alone. There must be considered also the financial contribution of each, and their co-operative business activity; their thrift and sacrifice, the moral responsibility upon which loans may have been obtained, which made possible the expansion of their credit standing, and other values that go into a community aside from the financial contribution, as well as any agreement, express or implied, between the parties. Neither can the fact that title stood in the name of one or the other of the spouses be controlling. (*Killian* v. *Killian,* 10 Cal. App. 312 [101 Pac. 806]; *Mitchell* v. *Moses,* 16 Cal. App. 594 [117 Pac. 685]; *Fountain* v. *Maxim,* 210 Cal. 48 [290 Pac. 576].) In fact section 164 of the Civil Code provides that property acquired during coverture and taken in the name of the husband is presumed to be community property, and unless that presumption is successfully controverted by other

evidence a court is bound to find according to that presumption.

As said in *Fountain* v. *Maxim, supra,* "It has also long been the rule in this state that where separate and community property are so commingled that it is impossible to trace the funds, the whole will be treated as community property, upon the principle that the burden is upon the party claiming property is separate property to establish its character as such. (5 Cal. Jur. 298, sec. 16.)"

This presumption also applies with equal force to bank deposits. (*Fennell* v. *Drinkhouse,* 131 Cal. 447 [63 Pac. 734, 82 Am. St. Rep. 361]; *In re Boody,* 113 Cal. 682 [45 Pac. 858].) In this latter case, as in the case at bar, in several instances the evidence showed that a portion of the money deposited by the deceased was the proceeds of the sales of some real estate which was her separate property, as well as certain rentals therefrom, but that fact standing alone was insufficient to overcome the presumption.

The question here presented is largely a question of fact and in *Couts* v. *Winston,* 153 Cal. 686 [96 Pac. 357], the court said that "whether or not evidence offered . . . is clear and convincing is a question for the trial court . . . the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in this court," which language was quoted with approval in *Estate of Pepper,* 158 Cal. 619 [112 Pac. 62, 31 L. R. A. (N. S.) 1092], where the trial court in a close case there held the property was the separate property of the husband and that the presumption had been overcome.

It is asserted the husband and wife agreed early in their married life that their property should be considered as community property, and as to that the testimony shows that about a year after their marriage they were considering the purchase of the property at 1857 Hyde Street. The husband said he didn't have any money, so respondent herein, the wife, said she had one thousand dollars, and that if he wanted to buy some property she would contribute her money, but if he proposed to buy with some one else she would not advance the money; they then agreed to make the investment together, and after that, as she testified "we started out and kept on buying things and getting bigger and bigger." She also testified that often the deed was taken in the husband's

name, as he told her it didn't make any difference. He also suggested that they carry their bank account in a joint tenancy account, which was opened in January 1929.

Many cases emphasize the rule that when the parties agree that property shall be considered community property, that is sufficient to so create it. (*Estate of Wahlefeld,* 105 Cal. App. 770 [288 Pac. 870]; *Vieux* v. *Vieux,* 80 Cal. App. 222 [251 Pac. 640]; *Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214]; *Estate of Watkins,* 16 Cal. (2d) 793 [108 Pac. (2d) 417, 109 Pac. (2d) 1].)

In *Kenney* v. *Kenney,* 220 Cal. 134 [30 Pac. (2d) 398], the parties had orally agreed, both before and after marriage, that all the property owned by them, or subsequently acquired, was to belong to them equally. During the marriage, as here, they had improved some, disposed of some, and acquired other property, and the court said: "To attempt to trace any particular fund or parcel would not only be difficult but a futile and useless task in view of the trial court's finding that all property owned by the spouses at the time of the commencement of the action was community property."

The following language in *Estate of Sill,* 121 Cal. App. 202 [9 Pac. (2d) 243], is very appropriate to the situation before us:

"Conceding that the entire purchase price of the property was made up from the separate property of both deceased and respondent, we are nevertheless of the opinion that there was ample evidence to justify the finding and conclusion that the property in question became the community property of the spouses. Without regard to the presumption found in section 164 of the Civil Code, it is well settled that the separate property of either or both spouses may be transmuted into community property and this may be done without the necessity of any written agreement providing the agreement or understanding to that effect is fully consummated. Citing cases. . . . In *Estate of Wahlefeld* (105 Cal. App. 770 [288 Pac. 870]) the court said at page 776: 'In the present case there was a meeting of the minds and any form of expressed words, either spoken or written, that the property was to be considered community property was sufficient.' In *Martin* v. *Pritchard, supra* [52 Cal. App. 720 (199 Pac. 846)], the court said, at page 724: 'That the wife had an

interest in the property is very clear. What the character of that interest was is not so certain. The court came to the conclusion, on a balancing of probabilities, that a community interest was intended by the parties. It cannot be said that the court's finding had no support in the evidence.' ''

 It is not the province of this court to weigh the evidence (*Van Buren* v. *Green,* 120 Cal. App. 461 [7 Pac. (2d) 1079] ; *Mitchell* v. *Holmes,* 9 Cal. App. (2d) 461 [50 Pac. (2d) 473] ), and even should we be of the opinion that the finding should have been otherwise, unless there is a total absence of competent evidence to sustain the finding, we cannot reverse the trial court. (*Thoele* v. *Thoele,* 102 Cal. App. 387 [282 Pac. 1001] ; *Estate of Seegelken,* 103 Cal. App. 691 [284 Pac. 987] ; *Estate of Filippi,* 9 Cal. App. (2d) 407 [49 Pac. (2d) 892] ; *Washko* v. *Stewart,* 20 Cal. App. (2d) 347 [67 Pac. (2d) 144].)

The question for this court is not how we would have determined the facts, but whether there is substantial evidence supporting the conclusion of the trial court. *Parker* v. *Riddell,* 41 Cal. App. (2d) 908 [108 Pac. (2d) 88] ; *Fewell & Dawes, Inc.,* v. *Pratt,* 17 Cal. (2d) 85 [109 Pac. (2d) 650], and after an examination of the record in this matter, assisted by able oral presentation by respective counsel, we cannot find wherein the trial court has committed any error, and the judgment and decree are therefore affirmed.

Appellant's petition for a hearing by the Supreme Court was denied January 15, 1942.