[Civ. No. 4372. Fourth Dist. May 28, 1952.]

JIM SANDRINI, Plaintiff and Appellant, v. ELIZIO AMBROSETTI, Individually and as Executor, etc., Defendant and Appellant; JENNIE SANDRINI ERICKSON, Respondent.

[Civ. No. 4373. Fourth Dist. May 28, 1952.]

JIM SANDRINI, Appellant, v. ELIZIO AMBROSETTI, Individually and as Executor, etc., et al., Respondents.

Johnston, Baker & Palmer for Plaintiff and Appellant.

Thomas W. Clarke and Mack & Bianco for Respondents and Defendant and Appellant.

GRIFFIN, J.—In 1907, Jim Sandrini came to this country from Italy. He accumulated about $10,000. In 1920, he married Dominica Ciapponi, aged 31, a widow with three minor children, Josephine, aged 11, Anna, aged 5, and Charles, aged 3. The two youngest children were adopted by Jim. At that time Dominica possessed personal property of the approximate value of $2,400. Their properties were commingled and thereafter used jointly. About that time they made mutual wills in favor of each other. Jim agreed to and did thereafter support the three minor children. Jim had very little education. His wife managed transactions involving the properties they acquired. After a short period of dairy operations in New Mexico they moved to the San Fernando Valley where they, on February 22, 1941, acquired a ranch and used their money as a down payment. The title thereto was taken in their names as joint tenants. The parties prospered through their joint efforts. A joint bank account was maintained and numerous properties were thereafter acquired. Dominica negotiated most of these transactions and Jim signed such papers as were necessary. He testified that he believed that all of their properties were so handled that in the event of the decease of one spouse, all the property would go to the other spouse.

In 1937, new wills were made by the parties. Jim testified he was told by his wife that she was leaving all of her property to him and that the will he signed left all his property to her in case of his death. The parties sold the San Fernando property in 1943, purchased a large ranch in Kern County and took title as joint tenants. The three children of Dominica married. A child named Jennie was born to Jim and Dominica. The dairy business prospered and many successful investments were made. A joint bank account was maintained.

In 1948, Dominica was killed in an automobile accident. After opening her safe the evidence indicates that the will made by Jim was destroyed by someone. Jim testified that it was discovered by him for the first time that his wife's will gave him only one dollar and the remainder of her property was bequeathed to her children in equal shares. Elizio Ambrosetti, husband of Josephine, was named as executor of the will. Jim also testified that sometime after Dominica's death he discovered that his wife had taken title to the properties they had acquired together, not only as joint tenants but in their names as husband and wife, and in his

wife's name alone; that his wife, during her married life, made two gifts of assigned securities and notes to her two daughters, Anna and Josephine, which notes were valued at $12,279.41.

The properties owned by Dominica and Jim at the time of her death, and the manner in which title was acquired are as follows:

Real and personal property held in joint
tenancy ...........................$176,798.19
Real and personal property held as hus-
band and wife ..................... 210,713.06
Personal property consisting of secured
and unsecured notes held in wife's name 61,239.32

Jim Sandrini, as plaintiff, commenced an action numbered 50461 in the lower court (and 4 Civil No. 4372 in this court on appeal) against Elizio Ambrosetti, individually and as executor of the last will and testament of Dominica Sandrini, and against the named children, setting out the several properties mentioned, other than the joint tenancy properties, and alleged that plaintiff owned an undivided one-half interest therein and that defendants owned one-half thereof, and asked that said properties be partitioned according to their respective rights, and that a receiver be appointed to collect the rents, etc. The action was dismissed as to the individual defendants. The executor answered, denied that the plaintiff was the owner of any portion of the property described, with certain exceptions, and claimed that the named children were entitled to such property subject to administration of the estate. An amended cross-complaint was filed by the executor and, by order of court, the three children were allowed to join in such proceeding. Jennie refused to join as a cross-complainant and she was joined as a cross-defendant. They alleged therein that on May 30, 1948, the will of Dominica Sandrini was admitted to probate in proceeding No. 10029 in that court, and alleged the appointment of the executor; that one dollar was devised to Jim and the residue was bequeathed to the four children, share and share alike; that all of the described property, *including the property held by the parties as joint tenants,* was the community property of the parties; that as to the joint tenancy property, when the parties acquired it, and at all times thereafter, they agreed between themselves and understood it was and would be their community property, even though held as joint tenants, and that each would retain

the testamentary disposition over one-half of it; that they received the income therefrom and treated it as community property; that plaintiff claims the same as his sole property as a surviving joint tenant; that such claim is without right, and that cross-complainants and Jennie Sandrini be declared the owners of an undivided one-half interest therein, subject to the administration of the estate.

By way of answer to the cross-complaint, plaintiff alleged that there were certain properties mentioned in the estate which were not the properties of the decedent, but were the properties of plaintiff; that the joint tenancy property was acquired as joint tenants with his wife, and not as community property, and that it was fully understood that it would be held in that manner so that upon the death of one party it would go to the other. It is further alleged that on February 28, 1949, the Superior Court of Kern County made an order determining plaintiff to be the surviving joint tenant of the real property described in the cross-complaint; that said order became final and is res adjudicata as to the issues involving the joint tenancy property.

As to this last claim, although the question is not raised on this appeal, the answer is contrary to plaintiff's contention, as indicated in *Estate of Basso,* 68 Cal.App.2d 294 [156 P.2d 476]; and *United States* v. *Pierotti,* 154 F.2d 758.

On April 14, 1950, plaintiff, Jim Sandrini, filed another action No. 52771 (Appellate Court, 4 Civil No. 4373) against all of the named defendants. The amended complaint contains seven separate causes of action, four of which were later dismissed. After alleging the general facts related in the other action, it is alleged that plaintiff's wife, during her married life, and without his knowledge, had withdrawn money from the joint tenancy bank account, converted it into property which she placed in their names as husband and wife, not as joint tenants, and that she also placed property in her separate name; that he also discovered, after her death, that she invested $12,500 of the joint account funds in promissory notes which she gave and assigned to her two daughters.

In other causes of action, it is generally alleged that such property as was taken in plaintiff's wife's name, either individually or with plaintiff as husband and wife, was property intended by the parties to be held as joint tenants and that decedent deceived plaintiff by holding the property other than in joint tenancy. Plaintiff prayed that the deeds be

corrected accordingly; that the two daughters be required to account to plaintiff for all money taken from the joint account and given to them by plaintiff's wife during their marriage, and to account for all income therefrom.

Defendants answered and contended that the property was either community property of the parties or separate property of the deceased, and never was intended to be held as joint tenants.

The two cases were consolidated for trial and the court found generally as to action No. 50461 that all of the real and personal property standing of record in the names of plaintiff and his deceased wife, whether as joint tenants or otherwise, was community property, and likewise as to personal property standing in the name of the wife alone; that as to the joint tenancy property it was orally agreed and understood between them that at all times it was, and was to be considered as, community property. It concluded that since all of the property mentioned was community property, one-half of it belonged to plaintiff and the remainder belonged to defendants, subject to administration, and ordered partition accordingly. It also ordered plaintiff to account to the executor for the rents, issues and profits of the property standing of record in joint tenancy, and ordered the executor to account to plaintiff for the one-half of the property standing of record in the name of the decedent alone.

As to action No. 52771 (4 Civil No. 4373) the court found against plaintiff on all counts except the one involving the notes assigned to the two daughters. It found that on January 28, 1947, the deceased wife did transfer, by way of gift to them, a note showing a balance of $6,279.41, and on February 21, 1947, another note with a balance of $6,000, which notes were community property of plaintiff and his deceased wife; that such gifts were made without the knowledge or consent of plaintiff and that therefore plaintiff was entitled to have returned to him one-half of such gifts, or $6,139.70, with interest. Judgment was entered accordingly.

Plaintiff appeals from the portion of the judgment denying him relief in action No. 52771. Defendant and cross-complainant, Elizio Ambrosetti, individually and as executor, appeals from that portion of the judgment in action 50461, which adjudges that plaintiff owns an undivided one-half interest in the personal property therein mentioned standing in Dominica Sandrini's separate name.

The first and main question presented is the sufficiency of

the evidence to support the court's finding that the property held in joint tenancy was acquired and held by plaintiff and his wife as community property; that such acquisition was the result of the joint efforts of each; that title thereto was taken in joint tenancy without any intent of converting the community nature thereof into joint tenancy; that it was orally understood and agreed between them that all of their property, regardless of the manner in which it was taken or stood of record, was to be considered by them to be their community property; that during their married life it was agreed and understood that each would have the power of testamentary disposition over one-half thereof, regardless of the manner in which title was held.

Plaintiff testified generally that his wife transacted all details of the purchase and sale of the properties; that he trusted her to abide by the agreement they made at the time they were married and many other times during their married life that the property would be so held that in case his wife died it would come to him and in case he died it would go to her; that he did not know the distinction between joint tenancy and tenancy in common; and that he believed they made mutual wills in favor of each other.

Plaintiff's testimony was corroborated by his daughter Jennie, who testified she heard her mother say in plaintiff's presence that if anything happened to "me, when I die it will go to you (father) and when you die it will go to me (mother)." In addition to the form of the deeds being made in joint tenancy, there is the testimony of the real estate agent who handled two of the transactions, that Mrs. Sandrini requested that title be taken as joint tenants with her husband. Defendants endeavored to impeach this agent's testimony by showing he made a contrary statement on a previous occasion in the presence of three other persons when he stated that Mrs. Sandrini said nothing in respect to the manner in which title should be taken but stated that he "just assumed" that was the way she wanted it vested.

There is uncontradicted evidence in the record showing that when Mr. and Mrs. Sandrini acquired one piece of property with the son Charles, the instructions read that the Sandrinis were to hold their interests as joint tenants; that Mrs. Sandrini inquired as to its meaning and that she stated that she did not care how title stood so long as she would obtain one-half of their interest and her husband the other half; that the escrow agent then changed it and struck out

the clause "as joint tenants." The deed is in evidence and so indicates.

There is also the testimony of the three elder children and of several other witnesses, that Mrs. Sandrini, in the presence of plaintiff, on many different occasions said that she and Jim had their property together, and "when she died half was going to her four children" and as to plaintiff's half, "he was to do with it what he wanted" and that Jim said "that was all right with him, 'I feel the same way about it,' " or that she said, when discussing the manner in which title was taken, "There is nothing to worry about, it is half yours and half mine."

One witness testified that when the attorney came to get into the safe and examine the deeds after Mrs. Sandrini's death, the attorney remarked: "Some of this belongs to the estate and some does not," and that "Jim said 'It don't make any difference, it is all ours. It is all mine and my wife's' "; that the attorney explained that under the will the wife's part was given to the four children and Jim said "Yes, I understand that. That is the way it was supposed to be." The record further shows that Jim joined with the executor in sharing one-half of the proceeds from the sale of crops from certain properties and in receiving interest payments on notes where title was held as husband and wife. Plaintiff denied that he was present or participated in any such conversations.

Plaintiff argues that there is nothing in the evidence indicating that Dominica Sandrini ever intended, by the general terms of the will, that any part of the specific property held in joint tenancy was to pass by her will; that in the absence of fraud or estoppel against the survivor, and where decedent had the sole management and control of the property which she herself had placed in joint tenancy, the right of survivorship of a surviving spouse in property held in joint tenancy by a husband and wife may not be defeated solely by oral evidence of an alleged agreement between the spouses based on extrajudicial statements, which are denied by the survivor; that Civil Code, section 161, provides that a husband and wife may hold property as joint tenants, as tenants in common, or as community property; and that joint tenancy tenure is distinguished from community property tenure and that each joint tenant's interest is separate property, citing *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003]; that property held in joint tenancy should not be placed in the estate of

a deceased as joint tenant so as to be carried by her will, particularly when the deceased joint tenant was the manager of the property who, as between the joint tenants, was the one responsible for the use of the joint tenancy form in the first place; that under such circumstances the law requires quite substantial evidence in order to overturn formal instruments of title; and that there is not any substantial evidence present here, even if the testimony of the witnesses is accepted as true, and every reasonable inference capable of being drawn therefrom is indulged in. In support of these contentions he cites such cases as *Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933]; *Walker* v. *Walker*, 108 Cal.App.2d 605 [239 P.2d 106], and *Socol* v. *King*, 36 Cal.2d 342 [223 P.2d 627], which sets out the applicable rules together with numerous citations holding that property acquired under the joint tenancy instrument may be shown to be actually community property according to the intention, understanding or agreement of the parties, but where no such intention, understanding or agreement exists, "a true joint tenancy is created by a conveyance to a husband and wife in that form, although the property is purchased with community funds." (See, also, *Estate of Gaines*, 15 Cal.2d 255 [100 P.2d 1055].) He argues that this case is not a divorce action where the spouses are living and the court can weigh the direct testimony as to statements and admissions of intent; and that the law is such that the presumptions in favor of the joint tenancy instruments cannot be overcome by the evidence in this case.

The evidence indicates and the court found that the parties had no knowledge or understanding of the effect of taking title as joint tenants and rather indicates that both parties believed, at all times, that whatever property they admittedly acquired by their joint efforts during their lifetime would, upon their deaths, belong one-half to the husband's estate and one-half to the wife's estate, and that each would have testamentary disposition of his or her one-half. The confusion seemingly arose when it was discovered, after the wife's death, the title to the property stood in their names as joint tenants, as husband and wife, and in the wife's separate name, and that the wife's will bequeathed her one-half to her four children rather than to plaintiff.

It is well settled that a husband and wife may agree with respect to the character of the property which they hold, and that they may transmute their property from one status to another by agreement which ordinarily need not

be executed with any particular formality, and it has been declared that notwithstanding the fact that property is held as joint tenants, declarations in a mutual will may constitute an agreement between the spouses fixing the status of their property as community property. (*Estate of Watkins*, 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1]; *Norton* v. *Estate of Norton*, 41 Cal.App. 614 [183 P. 214]; *Chase* v. *Leiter*, 96 Cal.App.2d 439 [215 P.2d 756].)

An inference may be here warranted by the terms of Dominica Sandrini's will that plaintiff and his wife had entered into some agreement and had reached an understanding as to the character of the property they acquired and the manner in which it would be held so that plaintiff would receive one-half thereof and that the deceased would receive one-half and that her one-half would be subject to her testamentary disposition. Since there was no specific bequest of any particular property, the inference might reasonably be drawn that they were to consider all property as community property, regardless of the manner in which title was held, and that each would retain the testamentary power over his or her one-half interest. It provided for a bequest of one dollar to plaintiff and stated: ''My husband and myself having heretofore divided our property between us.''

In *Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443], a trust was created involving joint tenancy property. The court held that declarations regarding the intent of the parties were admissible and that the trial court was warranted in concluding that all of the property was community property despite the use of the joint tenancy form in some of their holdings.

Plaintiffs rely principally upon the holding in *Socol* v. *King, supra*. There the court found that the joint tenancy prevailed and said where there is an oral or written agreement as to the ownership of the property or where such an understanding ''*may be inferred from the conduct and declarations of the spouses*,'' the terms of the deed are not controlling, but that where such circumstances do not exist, a true joint tenancy is created by a conveyance to a husband and wife in that form, although the property is purchased with community funds. It did hold, however, that when property is purchased with community funds and title is taken in joint tenancy at the request of the wife, the secret intention of the wife that the property shall remain part of the community property is not effective; that she cannot defeat her act by testimony of a hidden intention not disclosed to the other party at the time of the execution of the document.

It was held in *Rogers* v. *Rogers*, 86 Cal.App.2d 817 [195 P.2d 890], that an executed oral agreement to the effect that all properties owned by the parties at the time of marriage or subsequently acquired by them should be community property was sufficient to change the character of the property from separate to community property even though the parties held the property as joint tenants; and that under such circumstances the court is not bound by the form of the deed alone. The evidence supporting the finding was predicated upon statements by the husband to his wife that "we were putting all our properties in this one property, so that it would be easily handled. . . . It was our community property. We would take it in joint tenancy. . . . She also told me that everything we had was community property, that it was our both, it belonged to both of us, equal valuations . . . well, that everything was equally mine, that we had equal valuations on everything, everything was community property."

 It is true that the form of the conveyance creates a presumption of intent to hold the property jointly, but such presumption may be overcome by evidence of a contrary intent; and that where there is evidence that title is held in joint tenancy and also evidence that the property was intended to be community property, it is for the trial court to determine which line of evidence controls. (*Perdicalis* v. *Perdicalis*, 92 Cal.App.2d 274 [206 P.2d 650].)

In *Rogers* v. *Rogers, supra,* the court stated that a trial court's finding will be reversed on appeal, in this respect, only where it is totally unsupported by evidence and the evidence compels a contrary finding as a matter of law.

From an examination of the several cases cited, what facts and circumstances are sufficient to overcome the presumption are as varied as the number of cases in which the problem has been presented. In *Luminoso* v. *Luminoso,* 75 Cal.App.2d 472 [171 P.2d 516], a divorce action, at the time of taking title as joint tenants, there was no discussion between the spouses as to the taking of title as joint tenants. One was ignorant of the form of the deed but they always talked of the property as community property. The evidence in that case was held sufficient, where the property was purchased with community funds. See, also, *Buehler* v. *Buehler,* 73 Cal. App.2d 472 [166 P.2d 608] ; and *Perdicalis* v. *Perdicalis,* 92 Cal.App.2d 274 [206 P.2d 650].

Defendants argue that the rule only applies in divorce actions, where the parties are living and testify to a previous agreement between them, and cannot be applied to actions such as this where a devisee is testing the rights of a surviving joint tenant's claim to the property. We perceive no particular distinction or line of demarcation in the application of the principles enunciated, and conclude that the foregoing rules are not limited, in their application, to divorce actions. This same contention was made in *Chase* v. *Leiter,* 96 Cal. App.2d 439, 449 [215 P.2d 756], declaring certain property held in the wife's separate name to be community property. The court cited *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1]; *Estate of Sehabiague,* 47 Cal.App.2d 793 [119 P.2d 30]; and *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390], where property was being purchased under a contract of sale by a single woman and after marriage she deeded it out to a third party, who in turn deeded it back to her and her husband as joint tenants. Later, the husband executed a deed of gift to his wife. After the wife's death, her heirs objected to the husband's petition for distribution of the property to himself as sole distributee. After reciting the evidence as to the manner in which the parties intended to hold the property the court in the Wilson case, page 126, said:

"If the conclusion of the trial court had to be based upon the deeds alone, that is, if the nature of the Wilsons' interest in the property which was their home was determined entirely by the written instruments, appellants' contention would have a sound basis. But, as between Mr. and Mrs. Wilson and *those claiming through them,* the character of their interest in the property is not necessarily that which would follow from the form of the deeds." (Italics ours.)

In the case of *Chase* v. *Leiter, supra,* it is remarked:

"Respondent contends that the rule that a husband and wife by agreement may change the form of their properties into community property has been followed only in divorce cases, with the single exception of *Estate of Watkins, supra* (16 Cal.2d 793). Such contention overlooks such cases as *Estate of Sehabiague,* 47 Cal.App.2d 793 [119 P.2d 30], and *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390]. . . . In the Wilson case the court said (pp. 126-127): 'It is now too well settled to justify more than the citation of the authorities that in spite of the mold into which a deed would seemingly press a title, either because of the intent with which the

deed was made [citation], or made and received [citation], or because of an oral agreement between a husband and wife, carried into effect, determining their respective interests in real estate [citations] property which, measured by the deed, would not be community property, nevertheless may be just that.' '' (See, also, *Estate of Sill,* 121 Cal.App. 202 [9 P.2d 243] ; and *Estate of Wahlefeld,* 105 Cal.App. 770 [288 P. 870].)

There is sufficient competent evidence supporting the finding of the trial court on this issue. It therefore follows that the evidence fully supports the court's finding that the property standing in the name of Dominica Sandrini alone was community property and that the executor should account to plaintiff for one-half of it and its proceeds.

Under sections 161a-164 and 172 of the Civil Code, giving the management and control of the community property to the husband, plaintiff was entitled to recover the notes secretly assigned by Dominica Sandrini as a gift to the two preferred children, which property was properly found to be community property, and the trial court was authorized to order that one-half thereof be subjected to the administration of the estate. (*Salveter* v. *Salveter,* 135 Cal.App. 238 [26 P.2d 836] ; *McMullin* v. *Lyon Fireproof Storage Co.,* 74 Cal. App. 87 [239 P. 422] ; *Henry* v. *Hibernia Sav. & Loan Soc.,* 5 Cal.App.2d 141 [42 P.2d 395] ; *Bank of Suisun* v. *Fiske,* 65 Cal.App. 771 [225 P. 7] ; 3 Cal.Jur. 10-Yr.Supp. p. 618, § 105; 3 Cal.Jur. 10-Yr.Supp. p. 608, § 98.)

The remaining question involves the appeal of plaintiff from the order denying him relief demanded in action No. 4373, wherein the main contention is that the court erred in refusing to declare that it was the intention of the parties that the entire estate was to be held by them as joint tenants and that accordingly plaintiff was entitled to all of it by reason of the termination of that joint tenancy by the death of his wife. A community estate and a joint tenancy cannot exist at the same time in the same property. (*Siberell* v. *Siberell,* 214 Cal. 767, 773 [7 P.2d 1003].) The finding heretofore made and discussed sufficiently disposes of this question since the court properly found the property was community property. The sufficiency of the evidence to support the contentions made by plaintiff pertaining to this count as well as the other counts involved was for the trial court to determine. It cannot be said that its finding on the subject was lacking in evidentiary support or was contrary

to law. (*Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873]; *California Trust Co.* v. *Bennett*, 33 Cal.2d 694 [204 P.2d 324]; Civ. Code, §§ 683, 1091.)

Judgments affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 20, 1952, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied July 24, 1952.