[Civ. Nos. 35488, 38055. Second Dist., Div. Four. Jan. 28, 1972.]

BRUCE ALLAN McLELLAN, as Executor, etc.,
Plaintiff and Respondent, v.
ALLAN C. McLELLAN, Defendant and Appellant.

(Consolidated Appeals.)

## COUNSEL

Louis Romero for Defendant and Appellant.

Hahn & Hahn and Leonard M. Marangi for Plaintiff and Respondent.

## OPINION

DUNN, J.—This is a consolidated appeal by the defendant from an interlocutory judgment, a supplemental judgment, an order modifying that

judgment, and a post-judgment order, all rendered in a divorce action commenced by Jeanne McLellan. Mrs. McLellan died after entry of the interlocutory judgment granting her a divorce, but before completion of trial and entry of the supplemental judgment. By order of the court her son Bruce McLellan, special administrator of her estate was substituted as plaintiff.

On October 30, 1967, Jeanne McLellan filed a first amended complaint for divorce from Allan C. McLellan on the grounds of extreme cruelty and adultery.[1] In the complaint it was alleged: The parties were married on November 29, 1941, and separated July 1, 1967; there were two minor children of the marriage; defendant had treated plaintiff with extreme cruelty, and had committed adultery with one Lydia M. in June 1967; the community property of the parties included the family residence in La Canada, real property in Palmdale, a 1965 automobile, four life insurance policies, one health and accident and one disability policy, plus other assets presently unknown. Plaintiff sought a judgment granting her an interlocutory divorce, custody of the minor children, alimony, child support and attorneys' fees. She also requested that the court award her all of the community property of the parties.

Defendant filed an answer denying the allegations relating to extreme cruelty and adultery and the enumeration of community property. He also filed a cross-complaint for divorce on the ground of extreme cruelty in which he alleged that the community property of the parties consisted of the automobile, household furnishing and life insurance policies. Plaintiff answered the cross-complaint, denying that she had treated defendant with extreme cruelty and alleging that the community property was as set forth in her complaint, plus other items including defendant's medical practice and its assets.

Trial of the action commenced May 27, 1968.[2] Plaintiff called as her first witness Lydia M., the corespondent, who testified that in June 1967 she and the defendant had committed adultery. On May 31 the trial continued in the Glendale Community Hospital for the purpose of taking the testimony of plaintiff who had been hospitalized May 30. Plaintiff testified she had been "upset . . . very, very much emotionally" on learning of

[1] On July 18, 1967 plaintiff had filed a complaint for separate maintenance on the ground of extreme cruelty.

[2] The findings of fact in the clerk's transcript indicate that trial began May 22, 1968 and that the court also "heard testimony" on May 24. The proceedings had on these dates are not included in the reporter's transcript, which commences with the proceedings of May 27.

the conduct of defendant and Lydia M. She also testified concerning various items of property of the parties and living expenses for herself and her minor child.[3]

Upon completion of plaintiff's testimony, court and counsel left her room and adjourned to the hospital waiting room where further proceedings were had with defendant and Lydia M. present. Counsel for plaintiff stated that plaintiff rested as to her grounds for divorce, reserving the right to offer further evidence relating to the division of property, support and other remaining issues. Plaintiff's attorney then moved that, based upon the testimony of plaintiff and Lydia M., the court make a finding that plaintiff was entitled to a divorce on the two grounds alleged.[4] The motion was granted on the ground of extreme cruelty over defendant's objection that he had not been given an opportunity to present evidence on the issues and on those raised under his cross-complaint. (This facet of the case is discussed later herein.)

On June 27, 1968, findings of fact and conclusions of law were signed and filed. The court found defendant had inflicted "grievous mental suffering" on plaintiff by committing adultery, and concluded she was entitled to a divorce on the ground of extreme cruelty. On June 28 an interlocutory judgment was entered granting plaintiff a divorce on this ground. In the judgment the court expressly reserved jurisdiction to adjudicate the remaining issues, including division of the community property and whether defendant and cross-complainant was entitled to a divorce.

On July 5, 1968, defendant filed a notice of appeal from the interlocutory judgment.

On July 8, 1968, plaintiff died. By order dated July 17, 1968, her son Bruce McLellan, special administrator of her estate, was substituted as plaintiff and cross-defendant.

On July 17th the court also issued a temporary restraining order which enjoined defendant from interfering in any manner with real or personal community property of defendant and decedent in the possession of Bruce McLellan, including the La Canada residence. On July 19th defendant was personally served with a copy of the restraining order, which was extended on July 29. On October 28, Bruce McLellan filed a declaration stating that on October 17 defendant broke into the residence in which

---

[3]Two of the parties' children were minors when the complaint was filed. Subsequently, in November 1967, one of these children became 21.

[4]When the trial resumed on June 10, 1968, plaintiff's motion to reopen the issue was granted and corroborating evidence was presented.

McLellan and his family were living and forcibly removed several rifles alleged to be community property of defendant and the decedent. Based upon this declaration the court on October 28 issued an order to show cause why defendant should not be adjudged guilty of contempt for willfully disobeying the restraining order.

On April 10, 1969, trial resumed. Counsel for defendant contended the court had no jurisdiction to proceed because the death of Mrs. McLellan had abated the cause of action stated in the cross-complaint, thereby precluding defendant from presenting evidence on the issue whether he was entitled to a divorce, and preventing the court from determining whether or not the community property should be equally divided. The court then offered to receive evidence as to defendant's cause of action for divorce "not by reason of his being entitled to a divorce as such . . . but rather to show what his cause of action might have been so as to have some effect on the disposition of property." Counsel stated he was "not prepared to put on any evidence on the cause of action that has been abated." Thereafter, and continuing on June 25, June 26 and July 3, 1969, the trial proceeded on issues reserved in the interlocutory judgment and on the order to show cause re contempt.

On September 15, 1969, findings of fact and conclusions of law were signed and filed covering these issues. The court found: defendant declined to produce evidence regarding his entitlement to a divorce from Mrs. McLellan or her conduct toward him, as alleged in his cross-complaint; by reason of defendant's conduct toward the decedent, plaintiff was entitled to more than half the community property, which included the family residence, the unimproved real property in Palmdale, household furnishing, a gun collection, the automobile, certain shares of stock, life insurance policies and defendant's medical practice; defendant was able to and should pay $175 per month as support for the minor child and $2,500 as fees for plaintiff's attorneys; defendant willfully violated the temporary restraining order. Based on the last finding, the court concluded defendant was in contempt of court but that no sentence should be imposed because no purpose would be served thereby.

On September 17, 1969, a supplemental judgment was entered on the issues which had been reserved in the interlocutory decree. The following community assets were awarded to plaintiff as executor of the estate of the decedent:[5] the residence and the furnishings therein, an undivided half interest in the Palmdale property and $5,986.89 representing certain

[5]In her will, executed March 8, 1968, Mrs. McLellan bequeathed her entire estate to her children.

community assets appropriated by defendant. Various items of community property were awarded to defendant, who was ordered to pay child support and fees for plaintiff's attorneys.

On October 7, 1969, plaintiff moved for an order modifying the judgment to include an award of costs. Pursuant to an order made November 4, 1969, the supplemental judgment was modified to include an award of costs to plaintiff as the prevailing party.

On November 10, 1969, defendant appealed from the supplemental judgment and the order modifying the judgment.

On May 12, 1970, plaintiff filed a motion for attorneys' fees and costs on appeal. Following a hearing, on June 12th the court made an order awarding attorneys' fees of $1,000 and costs in the amount of $526.

On July 10, 1970, defendant filed a notice of appeal from that order.

We ordered that the three appeals be consolidated, i.e., (1) the appeal from the interlocutory judgment of divorce, (2) the appeal from the supplemental (final) judgment as modified by the order awarding costs, and (3) the appeal from the order awarding attorneys' fees and costs on appeal. Each of these is an appealable judgment or order. (Code Civ. Proc. § 904.1, subds. (a), (b), (j); *Raff* v. *Raff* (1964) 61 Cal.2d 514, 519 [39 Cal.Rptr. 366, 393 P.2d 678]; *Fulton* v. *Fulton* (1934) 220 Cal. 726, 728-729 [32 P.2d 634]; *Hardin* v. *Elvitzky* (1965) 232 Cal.App.2d 357, 363 [42 Cal.Rptr. 748]; *Distefano* v. *Hall* (1963) 218 Cal.App.2d 657, 681 [32 Cal.Rptr. 770].)

I

Defendant first contends that the trial court exceeded its jurisdiction in granting Mrs. McLellan a divorce without first having permitted defendant to present either his defense thereto or evidence on his cross-complaint for divorce.

The record shows: after completion of Mrs. McLellan's testimony and that of Lydia M., plaintiff rested on the issue of divorce and moved for a finding that she was entitled to a divorce. Defendant objected, stating he was entitled to present evidence before the court made any such finding. The court indicated the only relevant issue at that point was whether Mrs. McLellan was entitled to a divorce and offered defendant the opportunity to present evidence on that issue. Counsel declined, stating he had no witnesses present. Under questioning by the court, counsel conceded he had no evidence which would rebut Mrs. McLellan's showing of extreme

cruelty or adultery.[6] The court thereupon announced its intention to make a finding that Mrs. McLellan was entitled to a divorce on the ground of extreme cruelty.

■ Unless the court otherwise directs, the normal order of proof in the trial of a civil action is that the plaintiff produces evidence on his part, the defendant produces evidence and the parties may then respectively offer rebutting evidence. (See Code Civ. Proc., §§ 607, 631.7; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, §§ 121, 122, pp. 2948, 2949.) However, it is within the sound discretion of the court to define issues and direct the order of proof. (*Foster* v. *Keating* (1953) 120 Cal.App.2d 435, 451 [261 P.2d 529]; *Costa* v. *Regents of Univ. of California* (1953) 116 Cal.App.2d 445, 462 [254 P.2d 85].) ■ Hence, after Mrs. McLellan had rested on grounds for divorce, the court could direct defendant to present his evidence on that issue before the time came for him to put on his case in chief. When he indicated he had no evidence to offer, the court properly found Mrs. McLellan was entitled to a divorce. ■ Moreover, a complaint and a cross-complaint are, for most purposes, treated as independent actions. (*Pacific Finance Corp.* v. *Superior Court* (1933) 219 Cal. 179, 182-183 [25 P.2d 983, 90 A.L.R. 384]; *National Electric Supply Co.* v. *Mount Diablo Unified School Dist.* (1960) 187 Cal.App.2d 418, 422 [9 Cal.Rptr. 864].) ■ ■ It is within the discretion of the court to order a severance and separate trials of such actions (Code Civ. Proc., § 1048; *Mellone* v. *Lewis* (1965) 233 Cal.App.2d 4, 7 [43 Cal.Rptr. 412]), and the exercise of such discretion will not be interfered with on appeal except when there has been a manifest abuse thereof. (*McArthur* v. *Shaffer* (1943) 59 Cal.App.2d 724, 727 [139 P.2d 959].)

■ Defendant is incorrect in his apparent assumption that the issue

---

[6]"THE COURT: I am asking you, as an Officer of the Court under the circumstances, if you can in good faith tell me that you have any testimony that will in any way rebut her testimony on the issue of adultery?

"MR. ROMERO [counsel for defendant]: Probably not on the issue of adultery as such . . . .

"THE COURT: The plaintiff has rested on that issue. I have given you an opportunity to put on testimony in contradiction to the record as it now stands and you have told me, as an Officer of the Court, that you haven't anything to contradict that.

"MR. ROMERO: I don't think, as to adultery, as such.

"THE COURT: Do you have any that is grounds for divorce on the grounds of extreme cruelty?

"MR. ROMERO: Not necessarily. I think that the Court should listen to all of the evidence before the Court makes up its mind.

"THE COURT: You have told me there isn't any other evidence on that issue."

Since defendant did not plead any affirmative defenses, such as condonation or connivance, he could not have presented evidence on such issues. (Code Civ. Proc., § 437; 16 Cal.Jur.2d, Rev., 551, Divorce, Separation, Etc., § 156.)

of his wife's right to a divorce turned upon whether he was entitled to a divorce on his cross-complaint. A court may grant a divorce to both parties. (*De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 874 [250 P.2d 598]; 16 Cal.Jur.2d, Rev., 400, Divorce, Separation, Etc., § 11.)

Defendant contends there was an abuse of discretion because the interlocutory decree dissolved the marriage and the plaintiff's death rendered defendant's cause of action for divorce moot, thus depriving him of his right to a trial of the issues. The contention is without merit. ■ The interlocutory decree of divorce did not dissolve the marriage; that result is accomplished only by entry of a final decree. (*Olson* v. *Superior Court* (1917) 175 Cal. 250, 252 [165 P. 706, 1 A.L.R. 1589]; *Green* v. *Green* (1944) 66 Cal.App.2d 50, 57 [151 P.2d 679]; *Estate of Fulton* (1935) 8 Cal.App.2d 423, 427 [48 P.2d 120]; *Corbett* v. *Corbett* (1931) 113 Cal.App. 595, 598 [298 P. 819].) The court had power to award Mrs. McLellan an interlocutory divorce, postponing the trial of defendant's right to a divorce under the cross-complaint. The death of the plaintiff prohibited the granting to defendant of any decree of divorce, but a showing of his right to such a decree was preserved insofar as it affected the division of community property.

The court also had the power to postpone trial and decision on the property rights to a time after rendition of the interlocutory decree. (*McClenny* v. *Superior Court* (1964) 62 Cal.2d 140, 144 [41 Cal.Rptr. 460, 396 P.2d 916]; *Elms* v. *Elms* (1935) 4 Cal.2d 681, 685 [52 P.2d 223, 102 A.L.R. 811]; *Pereira* v. *Pereira* (1909) 156 Cal. 1, 10 [103 P. 488].) ■ Under the law then in force, the interlocutory judgment granting Mrs. McLellan a divorce on the ground of extreme cruelty constituted an adjudication that she was entitled to more than half the community property. (Former Civ. Code, § 146; *Tipton* v. *Tipton* (1930) 209 Cal. 443, 444 [288 P. 65]; *Eslinger* v. *Eslinger* (1873) 47 Cal. 62, 64; *Gaeta* v. *Gaeta* (1951) 102 Cal.App.2d 87 [226 P.2d 619].) However, no determination of the precise property to which she was entitled was made, resolution of that issue being reserved for a later time. When she died following entry of the interlocutory judgment, it became a conclusive adjudication of her right to a divorce and was res judicata with respect to her right to at least one-half of the community property. (*Darter* v. *Magnussen* (1959) 172 Cal.App.2d 714, 718 [342 P.2d 528].) ■ Thereafter, the trial court retained jurisdiction to take such action as might be necessary to effectuate the rights adjudicated by the interlocutory judgment. (*McClenny* v. *Superior Court, supra,* 62 Cal.2d at pp. 145-146.)

■ As defendant points out, Mrs. McLellan's death following entry

of the interlocutory judgment worked an abatement of his cause of action for divorce. (*Greene* v. *Williams* (1970) 9 Cal.App.3d 559, 563 [88 Cal. Rptr. 261]; *Poon* v. *Poon* (1966) 244 Cal.App.2d 746, 751 [53 Cal. Rptr. 365]; and see Civ. Code, § 4350.) The effect thereof was to require the court to award more than half the community property to his wife's estate unless that right was modified by evidence to be received at trial of the postponed issues.[7] ■ Upon granting Mrs. McLellan an interlocutory divorce the court had the power to postpone trial and determination of the remaining issues, including property rights and defendant's right to a divorce. Such action, proper when taken, does not become erroneous in retrospect because of the fact of Mrs. McLellan's death.

## II

Defendant next contends the trial court erred in finding that the La Canada residence and the undeveloped land in Palmdale were community property.

Evidence was produced showing: in 1953 and 1954, respectively, the Palmdale property and the residence were conveyed to defendant and Mrs. McLellan by grant deeds, each deed designating them "husband and wife, as joint tenants." In 1956 they executed and recorded a declaration of homestead on the residence. In the declaration it was stated that defendant was head of the family, consisting of himself, his wife and their three children, and that the family was residing on the premises. In 1962 defendant and Mrs. McLellan agreed in writing that the Palmdale property was to be community property. Most of the assets which they possessed at her death were acquired from his earnings during the marriage. They considered that all of their property, except the land in Palmdale, was held in joint tenancy. Their chief reason for taking title in this form was the "convenience of avoiding probate"; they did not intend or understand that by virtue of the joint tenancy each should hold his interest as separate property. By quitclaim deeds executed March 8, 1968, Mrs. McLellan conveyed her interest in the residence and the Palmdale property to her father who, on the same date, quitclaimed the interests back to her.

■ The evidence as to the Palmdale property supports the finding

---

[7]If both parties had been granted a divorce on the ground of extreme cruelty, the court would have been required to divide the community property equally between them. (Former Civ. Code, § 146; *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 874 [250 P.2d 598]; *May* v. *May* (1969) 275 Cal.App.2d 264, 275 [79 Cal.Rptr. 622]; *Patterson* v. *Patterson* (1966) 242 Cal.App.2d 333, 348 [51 Cal.Rptr. 339], overruled on other grounds in *See* v. *See* (1966) 64 Cal.2d 778, 784 [51 Cal.Rptr. 888, 415 P.2d 776].)

it was community property. Although title originally was taken in joint tenancy, the subsequent written agreement was effective to change the status of that asset to community property. (*Dallman v. Dallman* (1959) 170 Cal.App.2d 729, 734 [339 P.2d 636]; *Schindler v. Schindler* (1954) 126 Cal.App.2d 597, 602 [272 P.2d 566]; *Sandrini v. Ambrosetti* (1952) 111 Cal.App.2d 439, 447-448 [244 P.2d 742]; *Faust v. Faust* (1949) 91 Cal.App.2d 304, 308 [204 P.2d 906].)

In the findings of fact, the court stated its finding that the residence was community property was based upon the following presumption created by Civil Code section 164 (now Civ. Code, § 5110): ". . . when a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife."

This presumption is rebuttable, and its effect is to place upon the party against whom it operates the burden of proving that the residence is not community property. (*Baron v. Baron* (1970) 9 Cal.App.3d 933, 939 [88 Cal.Rptr. 404].) Whether the evidence was sufficient to carry the burden of proof was a question for the trial court to resolve. (*Estate of Trelut* (1938) 26 Cal.App.2d 717, 723 [80 P.2d 147].) Our review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. (*Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].) In so reviewing, all conflicts must be resolved in favor of plaintiff-respondent and all legitimate and reasonable inferences must be indulged to uphold the finding. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

Viewed in the light of these principles, the finding is supported by substantial evidence. Thus: the residence was purchased with money earned by defendant during the marriage; defendant and his wife recorded a declaration of homestead stating that the premises were occupied by them and their children as a family; they placed title in joint tenancy not with the intention that each should hold his interest as separate property, but in order to avoid probate. Considered as a whole, such factors were sufficient to show a common understanding on the part of defendant and his wife that the residence was community property, and such understanding was determinative of that status. (*Baron v. Baron, supra,* 9 Cal.App.3d at pp. 940-941.)

Mrs. McLellan's conveyance of her interest in the residence to her father tended to refute the existence of a common understanding regard-

ing the community status of this property. (See Civ. Code, §§ 5105, 5127.) However, we may not weigh the evidence (*Walton* v. *Bank of California* (1963) 218 Cal.App.2d 527, 540 [32 Cal.Rptr. 856]), or substitute our deductions for those of the trial court. (*American Loan Corp.* v. *California Commercial Corp.* (1963) 211 Cal.App.2d 515, 521 [27 Cal.Rptr. 243].)

### III

Defendant further contends the court exceeded its jurisdiction in making the order excluding him from the residence after the death of his wife. The court's action in this regard took the form of a temporary restraining order enjoining defendant from residing in the home, or interfering with Bruce McLellan's possession thereof. ██ A temporary restraining order is separately appealable. (Code Civ. Proc., § 904.1, subd. (f); *David* v. *Goodman* (1948) 89 Cal.App.2d 162, 170 [200 P.2d 568]; *Monterey Club* v. *Superior Court* (1941) 44 Cal.App.2d 351, 353 [112 P.2d 321]; *Laam* v. *McLaren* (1915) 28 Cal.App. 632, 635 [153 P. 985].) ██ Defendant did not appeal from that order, and it is not reviewable on appeal from the supplemental judgment.[8] (Code Civ. Proc., § 906.)

### IV

Defendant next contends the court was without power to modify the supplemental judgment to include an award of costs to plaintiff.

After entry of the supplemental judgment on September 17, 1969, plaintiff filed a cost bill. Thereafter, defendant moved to tax costs, asserting that plaintiff was not entitled to costs under Code of Civil Procedure section 1032.[9] Plaintiff then filed a motion for an order modifying the

---

[8]In his brief, defendant argues that if the order was in excess of the court's jurisdiction, defendant could not properly have been found in contempt thereof. Thus he apparently seeks to have the adjudication of contempt reviewed on this appeal in spite of the rule that a review in contempt cases can be had only by habeas corpus, certiorari or prohibition. (12 Cal.Jur.2d 100, Contempt, § 78.)

[9]Code of Civil Procedure section 1032: "In the superior court, except as otherwise expressly provided, costs are allowed of course:

"(a) [Plaintiff.] To plaintiff upon a judgment in his favor; in an action for the recovery of real property; in an action to recover the possession of personal property; in an action for the recovery of money or damages; in a special proceeding; in an action which involves the title or possession of real estate or the legality of a tax, impost, assessment, toll, or municipal fine.

" . . . . . . . . . . . . . . . . . . . .

"(c) [Discretion, other actions.] In other actions than those mentioned in this section costs may be allowed . . . ."

judgment to include an award of costs. Following a hearing, the court on November 4, 1969, made an order granting the motion. In the order it was stated: "It was the court's intention to award costs to the plaintiff and cross-defendant as the prevailing party in [this] action; and . . . due to inadvertence, costs were not expressly included in the supplemental judgment." At a subsequent hearing on defendant's motion to tax costs, defendant moved to vacate the order modifying the judgment. The court denied the motion to vacate, stating: "Well, I said in open court . . . and I say again it was my intention to award costs."

Code of Civil Procedure section 473 provides in part: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed . . . ." ■ Under this provision, if an error is the result of inadvertence, but for which a different judgment would have been rendered, the error is clerical and the judgment may be corrected to correspond with what it would have been but for the inadvertence. (*Estate of Sloan* (1963) 222 Cal.App.2d 283, 292 [35 Cal.Rptr. 167].) ■ It is primarily for the trial court to determine whether the error was an inadvertence, and its conclusion as to this issue will not lightly be set aside. (*Minardi* v. *Collopy* (1957) 49 Cal.2d 348, 352, 353 [316 P.2d 952]; *Bastajian* v. *Brown* (1941) 19 Cal.2d 209, 214 [120 P.2d 9]; *Carpenter* v. *Pacific Mut. Life Ins. Co.* (1939) 14 Cal.2d 704, 708-709 [96 P.2d 796]; *Raines* v. *Damon* (1949) 89 Cal.App.2d 812, 815 [201 P.2d 886]; *Livesay* v. *Deibert* (1934) 3 Cal.App.2d 140, 147 [39 P.2d 466].)

■ We conclude that omission of costs from the supplemental judgment was the result of inadvertence, and hence was a clerical error which the court had power to correct by modifying the judgment to include an award of costs to plaintiff.

## V

Defendant's final contention relates to claimed error in the granting of plaintiff's motion for attorneys' fees and costs on appeal.

The motion was filed May 12, 1970, accompanied by a supporting declaration of plaintiff's attorney, who stated: he was personally familiar with all aspects of the lawsuit; the matter was unusually complex due to the nature of the parties' assets, reservation of jurisdiction in the interlocutory judgment and the fact there were two appeals then pending from two separate judgments; in view of these factors $1,500 was a reasonable amount for attorneys' fees on appeal, and $500 for costs was

reasonable; plaintiff was without sufficient funds to resist the appeal, while defendant was well able to pay the fees and costs requested. Defendant filed no opposing declaration.

At the hearing on the motion defendant, called as a witness by plaintiff, testified concerning the income from his medical practice. He was cross-examined, and then testified under redirect examination. At the conclusion of defendant's testimony, which was the only evidence presented at the hearing, the court granted plaintiff's motion, awarding $1,000 as attorneys' fees (payable at the rate of $200 per month) and $526 as costs (payable forthwith).

Defendant contends the order granting the motion must be reversed because the declaration in support of the motion was made by plaintiff's attorney rather than plaintiff, himself, who did not appear at the hearing to testify or be cross-examined.[10] The contention is without merit. Motions ordinarily are heard on affidavits, alone. (Code Civ. Proc., § 2009; *Beckett v. Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749]; *Guardianship of Van Loan* (1904) 142 Cal. 423, 426 [76 P. 37]; *Skouland v. Skouland* (1962) 201 Cal.App.2d 677, 678 [20 Cal.Rptr. 185]; *Fuller v. Lindenbaum* (1938) 29 Cal.App.2d 227, 230 [84 P.2d 155].) While a court has the discretion to receive oral testimony, it may refuse to do so and may properly rule solely on the basis of affidavits. (*Crocker-Citizens Nat. Bank v. Knapp* (1967) 251 Cal.App.2d 875, 880 [60 Cal.Rptr. 66]; *Muller v. Muller* (1956) 141 Cal.App.2d 722, 731 [297 P.2d 789].) It follows that plaintiff was not required to attend the hearing for the purpose of testifying and allowing himself to be cross-examined.

Defendant cites no authority, and we have discovered none, for the proposition that an affidavit in support of a motion must be made by the moving party, himself. The sufficiency of an affidavit must be tested by the same rules as those applicable to oral testimony. (*Mayo v. Beber* (1960) 177 Cal.App.2d 544, 551 [2 Cal.Rptr. 405].) By analogy to Evidence Code sections 700[11] and 702[12] any person is qualified

---

[10]At the hearing, defendant moved to quash the motion. The proceedings on the motion to quash were not reported, the record indicating only that the motion was made and denied.

[11]Evidence Code section 700: "Except as otherwise provided by statute, every person is qualified to be a witness and no person is disqualified to testify to any matter."

[12]Evidence Code section 702: "(a) Subject to Section 801 [opinion testimony by expert witness], the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter."

to make an affidavit in support of a motion and his declaration is competent evidence unless an objection is interposed on the ground the affiant had no personal knowledge of the matters stated.

■ Defendant did not object to the declaration on the ground plaintiff's attorney was without personal knowledge of the matters stated therein. Since the declaration shows the existence of the conditions necessary to warrant allowance of attorneys' fees and costs on appeal (see Civ. Code, § 4370, subd. (a); *Hunter* v. *Hunter* (1962) 202 Cal.App.2d 84, 92 [20 Cal.Rptr. 730]; *Pope* v. *Pope* (1951) 107 Cal.App.2d 537, 539 [237 P.2d 312]; *Fallon* v. *Fallon* (1948) 86 Cal.App.2d 872, 873-874 [195 P.2d 878]), the motion was properly granted on the basis of the declaration.

The interlocutory judgment, the supplemental judgment, the order modifying that judgment to include an award of costs, and the order allowing attorneys' fees and costs on appeal, are affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.